## WILLIAMSON CANDY CO. v. UCANCO CANDY CO.

(District Court, D. Delaware. January 2, 1925.)

No. 546.

1. **Trade-marks and trade-names and unfair competition** 93(2)—**Trade-marks for other confectioneries are pertinent in considering trade-marks for candies.**

Popcorn and chewing gum are confectioneries, and are so related to candy that trade-marks for one are pertinent in considering trade-marks for the others.

2. **Trade-marks and trade-names and unfair competition** 59(1)—**"Oh Henry" held not to entitle owner against use of all other Christian names.**

Adoption and registration of the words "Oh Henry" as the trade-mark for a candy held not to give the owner the broad right to prevent the use by another of the word "Oh," followed by any other Christian name whatever.

3. **Trade-marks and trade-names and unfair competition** 68—**Ocular or auricular similitude not the only means of unfair competition.**

The boundaries to the field of unfair competition are not so narrow as to exclude those means and forms of deception which do not depend on direct ocular or auricular similitude.

4. **Trade-marks and trade-names and unfair competition** 70(1) — **Defendant held chargeable with unfair competition.**

Complainant, owner of the trade-mark "Oh Henry," for a chocolate bar, held entitled to an injunction to restrain the use by defendant of the name "Oh Johnnie" on a bar like that of complainant in everything except that it is smaller and sells for half the price.

5. **Trade-marks and trade-names and unfair competition** 89—**Successor corporation held liable for unlawful acts of predecessor.**

A corporation succeeding to the business and good will of another corporation, with full knowledge of its acts in unfair competition with complainant, held liable for such acts, as well as for its own unfair competition.

In Equity. Suit by the Williamson Candy Company against the Ucanco Candy Company. Decree for complainant.

Francis H. Williams (of Little, Williams & Little), of Chicago, Ill., and Charles F. Curley, of Wilmington, Del., for plaintiff.

Walter M. Balluff, of Davenport, Iowa, Clarence E. Mehlhope (of Offield, Mehlhope, Scott & Poole), of Chicago, Ill., and Marvel, Marvel, Layton & Hughes, of Wilmington, Del., for defendant.

MORRIS, District Judge. Williamson Candy Company, plaintiff, is the manufacturer of a chocolate coated candy bar sold under the name "Oh Henry!" It here charges the defendant, Ucanco Candy Company, a Delaware corporation, which sells a like, but smaller, bar under the name "Oh Johnnie!" with trade-mark infringement and unfair competition. The usual equitable relief is sought.

The plaintiff began the use of "Oh Henry!" in 1918 as a trade-mark for a candy bar the shape, color and composition of which were old. Ucanco Candy Company, an Iowa corporation of which defendant was successor with notice of all facts, was the first to use "Oh Johnnie!" as a mark or name for confectionery. In 1921 it used that mark or name to designate a bar of candy, manufactured by it at Davenport, Iowa, which had the same shape, color, and composition as the "Oh Henry" bar. The wrapper for the "Oh Johnnie" bar was made of the same kind of paper as that used for "Oh Henry." The label upon the wrapper of the "Oh Johnnie" bar was printed with the same color and shade of ink as that used for "Oh Henry." On the plaintiff's label the words "Milk Nut" appeared above the words "Oh Henry." On the "Oh Johnnie" label "Milk Nut Roll" was placed beneath the words "Oh Johnnie." Advertisements of "Oh Henry" contained a pictorial representation of the wrapped bar, the unwrapped bar, and a transverse cross-section thereof, grouped together, with the latter two placed beneath the right and left hand corners, respectively, of the former. "Oh Johnnie" advertisements, later inserted in the same trade journal, contained a pictorial representation of the wrapped bar, the unwrapped bar, and a transverse cross-section thereof, grouped in the same manner and in the like position as in the prior "Oh Henry" advertisements. The "Oh Henry" bar was sold at retail for 10 cents. The "Oh Johnnie" bar was about one-half as large and was sold at retail for 5 cents.

In February, 1923, the plaintiff herein instituted, in the Southern district of Iowa, a suit against the Iowa corporation, wherein injunctive relief against alleged infringement of trade-mark and unfair competition was sought. Therein Judge Wade granted

a preliminary injunction, "restraining the defendant [the Iowa corporation] from the use of the label in blue ink now and heretofore used, and that the candy under the designation of 'Oh Johnnie' shall not be sold and distributed under any label which may be readily confused with the label of the complainant, * * * from using any advertisement from which it does not appear that the product is manufactured by the defendant company, * * * from in any manner representing to any person that the product 'Oh Johnnie' is the same as the 'Oh Henry,' except as to size and price, * * * and * * * from doing any act which in any manner is intended or planned to represent to the public that there is any relation between the two candies produced by the respective parties, or which does not leave the two products upon their respective merits to the public."

Judge Wade refused to pass upon the legality of the use of "Oh Johnnie" until final hearing, and hence refused to enjoin its use by preliminary injunction. By reason of such refusal the plaintiff appealed. The decree of the trial court was affirmed, upon the ground, as I understand it, that no abuse of discretion by the trial judge had been shown. Williamson Candy Co. v. Ucanco Candy Co. (C. C. A.) 297 F. 454. When the case in Iowa was called for final hearing in May of 1924, it appeared that in March, 1922, the Iowa corporation had transferred all its assets to a Delaware corporation of the same name, the defendant herein, and that the stockholders of the former had exchanged their shares for an equal number of shares of the Delaware corporation. The Iowa suit was dismissed without prejudice. Thereupon the present suit was instituted.

The defendant corporation manufactures and sells the identical product manufactured and sold by the Iowa corporation. It designates its product, as did its predecessor, by the trade-mark "Oh Johnnie." It asserts, however, that its advertisements have not at any time contained cuts or pictorial designs like that used by its predecessor as hereinbefore described. This the plaintiff does not deny. The defendant further asserts that, after the decision of Judge Wade, it discontinued the use of the blue label and adopted a new label, that could not be readily confused with the label of the plaintiff. The plaintiff admits the change in label, and does not here strongly urge that the present dress of defendant's bar, apart from the mark "Oh Johnnie," tends in any degree to create in the

mind of the casual purchaser the belief or impression that the defendant's bar is of the same origin as "Oh Henry"; that is, manufactured by the same or an affiliated company. Plaintiff's position is that the surpassing offense of the defendant (and of its predecessor) lies in the use of "Oh Johnnie," that "Oh Johnnie" is an infringement of the mark "Oh Henry," and that, without regard to the dress of defendant's product, "Oh Johnnie" is of itself calculated to mislead or deceive the public into the belief that the defendant's product is of the same origin as "Oh Henry," especially when used upon a product differing from that of the plaintiff in no particulars other than size, price, and quality.

[1] In support of its charge of infringement, plaintiff asserts that it is entitled to the exclusive use for a candy bar of (1) the word "Oh"; (2) the word "Oh" followed by any Christian name; and in any event (3) the words "Oh Henry." Its conclusion, as I understand it, is that, being so entitled, the use by any one, in connection with candy, of such words, words of like appearance or sound, or words which through the power of suggestion are calculated to give rise to a belief or impression that the candy so designated is of the same origin as "Oh Henry," is a violation of plaintiff's rights. I think the plaintiff has failed to establish that it has the exclusive right to the use of "Oh" in connection with candy. The evidence discloses that "Oh" has been used by several other persons as a part of a trade-mark for confectionery. "Oh My" was registered by the National Candy Company in 1907 as a trade-mark, No. 63,861, "for confections composed of or containing popcorn." "Oh Boy" has been used since October, 1915, by the Starkel Candy Company as a trade-mark for candies. "Oh Boy Gum" has been used as a trade-mark for chewing gum since October, 1918. While popcorn and chewing gum are not candy, they, like candy, may probably be properly considered as confectioneries, and are so related to candy that the trade-marks for one are pertinent in considering trade-marks for the others. See Aunt Jemima Mills Co. v. Rigney & Co. (C. C. A. 2) 247 F. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039; Akron Overland Tire Co. v. Willys Overland Co. (C. C. A. 3) 273 F. 674.

[2] Though it is not disputed that plaintiff was the first to use a Christian name in combination with "Oh" as a trade-mark for candy, I think it by no means follows that plaintiff thereby acquired the right to pre-

vent the use by another of each and every Christian name in combination with "Oh" solely because of their being Christian names. If plaintiff has the exclusive right to the use in connection with candy of Christian names in combination with "Oh," it is only by reason of the fact that no Christian name whatever may be so used by another without the probability of creating in the mind of the public a belief or impression that the candy so marked is of the same origin as "Oh Henry." The proof does not establish, and I am not prepared to say, that every Christian name would produce that result.

Passing to plaintiff's third subordinate contention, it is conclusively established by the evidence that "Oh Henry" does in fact denote or distinguish to the trade and to the public plaintiff's chocolate coated candy bar. Hence there is presented for decision the question whether the rights of plaintiff arising from that established fact have been invaded by the defendant in its use of "Oh Johnnie," or, more particularly, whether defendant's use of "Oh Johnnie" is calculated to plant in the mind of the public the belief or impression that the "Oh Johnnie" bar and the "Oh Henry" bar are of a common origin.

The fundamental purpose of a trade-mark is to point out the origin of the goods to which it is attached. Because of this basic function, a trade-mark enables the public to recognize and know again articles which have a common origin. It serves to distinguish the goods made or sold by one person from the goods made or sold by another. It protects the public against deception, and so preserves the established good will of one trader from injury at the hands of those who would pass off their goods as his. Ordinarily the act by which one attempts to pass off his goods as those of a person having an established trade and good will consists of a direct appeal to the eye or ear, respectively, through a greater or lesser simulation of the form and appearance of the goods themselves, their dress, their marks, or the name under which the business of their manufacturer or seller is conducted.

But it must not be overlooked that appeals to the eye and ear are but the means through which deceptive and false impressions are sought to be made upon the mind itself, and are consequently not exhaustive of the means by which unfair competition may be attempted or accomplished. As substantially the same thought may be suggested and aroused, the same mental reaction stimulated, the same picture brought before the mind's eye by words having neither the same physical appearance, spelling, pronunciation, nor sound—as, for example, the words "same" and "identical"—so the boundaries to the field of unfair competition are not so narrow as to exclude those means and forms of deception which do not depend upon direct ocular or auricular similitude.

[3] A trader, desiring to deceive, but not versed in the mental sciences, or in the method of implanting in the human mind through association of ideas or by suggestion a desired impression or belief, would probably use only such dress, marks, or names as would present directly to the eye or ear a deceptive resemblance to the dress, mark, or name of the trader having an established good will. But the trader, not more honest, but more skilled in the means and methods of confusing and deceiving the human mind, would probably resort as well to less direct, but not less successful, ways of accomplishing his aim. By such a person the power through suggestion to awaken the imagination and direct the mind to a predetermined goal would not be overlooked. But the law guards the good will of a trader—and thereby the public—against unlawful injury, and with equal care, whether the method of deception by which the injury is brought about is of the latter or of the former character.

[4] In determining whether the defendant here has done illegally anything that would leave with the public the impression or notion that its candy bar is of the same origin as "Oh Henry," certain subordinate principles must also be considered. To succeed, a plaintiff must show a deception arising from some feature of its own, not common to the public. But it is not necessary that the imitation of plaintiff's feature, taken alone, should be calculated to deceive. It is sufficient if it has that effect when considered upon the background made for it by the defendant. Schlitz Brewing Co. v. Houston Ice Co., 250 U. S. 28, 39 S. Ct. 401, 63 L. Ed. 822.

What is the result when the facts here are measured by the foregoing primary and secondary principles? Plaintiff's bar, common to the public, was copied as to ingredients, form, color, and general design. The paper wrapper, common to the public, but identical with that used by the plaintiff for "Oh Henry," was used for "Oh Johnnie." For the label printed upon the wrapper the identical color and shade of ink employed by the plaintiff were used. The advertis-

ing cuts used by the plaintiff, though unique in the arrangement of the objects depicted, were copied literally. "Oh," which, though as available to the defendant as to the plaintiff, was being used on but one candy other than "Oh Henry," and that not extensively, was adopted as part of the trade-mark. Thus far the "Oh Johnnie" bar had the appearance of being the same as the "Oh Henry" bar, save in size, price, and possibly quality. They were as alike as two brothers of different years. "Henry" could, of course, not be used for the remainder of defendant's trade-mark. In its stead "Johnnie" was adopted. Like "Henry," it is a word of two syllables, accented upon the first. Each syllable ends with the same sound as the corresponding syllable in "Henry." Even the exclamation point by which "Oh Henry" was followed did not escape seizure and adoption.

While in suits of this character it is not essential to prove that the defendant intended to pass off its goods as those of the plaintiff, yet its intention so to do is by no means immaterial, because, if it be established that the defendant intended to deceive—intended that its goods should be passed off as the plaintiff's—it can rarely with effectiveness, and never with grace, say that its fraudulent conduct has not had, and will not have, the intended effect. Cutler on Passing Off, pp. 5, 6. It would be a strain upon human credulity to believe that such and so many points of similarity as here found could innocently exist. See Yale & Towne Mfg. Co. v. Alder, 154 F. 37, 83 C. C. A. 149 (C. C. A. 2); Putnam Nail Co. v. Bennett (C. C.) 43 F. 800. The only plausible purpose for the similarity was to enable the smaller bar to be passed off as the product of the plaintiff. Yet it is true that "Henry" and "Johnnie" are names of and denote two separate and distinct individuals, and, besides, in view of the difference in size and price between the two bars, it is equally true that no one would be apt to buy an "Oh Johnnie" bar in the belief that he was buying an "Oh Henry" bar.

But those facts fall far short of an exoneration. The plaintiff's rights are not so narrow. It was and is also entitled to have the public not induced into buying "Oh Johnnie," instead of "Oh Henry," upon the direct or indirect representation or suggestion that the "Oh Johnnie" bar is of the same origin as the "Oh Henry" bar. Common origin may be indicated and expressed in many different ways. I think nothing has been omitted, even to the diminutive ending of "Oh Johnnie," that would be calculated to create in the mind of the public the impression or belief that the "Oh Johnnie" bar is the smaller brother of the "Oh Henry" bar. That is a suggestion well calculated to deceive, for the public does not need to be told that brothers are children of the same parents. The impression so created in the mind of purchasers is not, I think, materially affected by the fact that the name of the manufacturer appears upon the respective bars or wrappers.

The defendant, however, correctly points out that it has never resorted to advertisements employing cuts of the kind used by the Iowa corporation, and that it has since Judge Wade's decision in the Iowa case so changed the label upon its goods as to prevent any similarity between its label and that of the plaintiff. But that did not end defendant's offending. Those were only some of the means employed to suggest a common origin for "Oh Henry" and "Oh Johnnie." I think the strongest suggestion to that effect arose from the mark "Oh Johnnie" on a bar like the bar of the plaintiff in everything except size and price. These acts have been continued by the defendant.

[5] The use by the defendant of "Oh Johnnie" or any other mark or dress calculated to mislead or deceive the public into the belief that the candy bar put out by the defendant is the product of the plaintiff company, or of a company affiliated therewith, must be enjoined. Moreover, as the property of the Iowa corporation was acquired by the defendant with full knowledge of every act by which the Iowa corporation had acquired the good will transferred by it to the Delaware corporation I think the defendant should account to the plaintiff for the unlawful acts of its predecessor, as well as for its own unlawful acts.