34 F.2d 802 (1929)
STANDARD OIL CO.
v.
MICHIE.
No. 8606.
District Court, E. D. Missouri, E. D.
July 20, 1929.
Albert L. Green, of Chicago, Ill., and Allen Oliver, of Cape Girardeau, Mo., for plaintiff.
H. E. Alexander, of Cape Girardeau, Mo., and B. A. McKay, of Caruthersville, Mo., for defendant.
FARIS, District Judge.
Plaintiff sues to enjoin the use of the word "Standard," in the name and style "Standard Service Station," under which defendant carries on a competitive business, and for other relief.
Plaintiff is engaged in the business of selling, inter alia, gasoline and lubricating oils in Missouri, and in many other states of the Union. It was organized under the name of Standard Oil Company, at least as early as 1889, and under this name has been doing business, as said, in many states of the Union, and in Missouri since 1897. It carries on in Missouri both a retail and a wholesale business in gasoline and oils, having in *803 the St. Louis district alone some 300 filling stations at which it retails its products. Many of these stations it owns outright; others it leases. It has a standard color scheme, which it uses to designate its stations and gasoline pumps, and in lettering its signs. This color scheme, however, differs according as to whether the station in question be a leased one, or one which is owned absolutely by plaintiff.
Both plaintiff and defendant, when this action was begun, had, and now have, retail stations for the sale of gasoline and oils in the town of Steele, in Pemiscot county, Mo. Defendant, in his place of business, also carries a line of tires and tubes, and perhaps renders service for the public in the repair of tires and tubes, and perhaps renders service in other similar matters. Some stress was put, in the trial of the case, upon this feature thereof. But it is so obvious that it cuts no figure whatever, that I need not discuss it further.
Plaintiff, for many years prior to 1921, had an agency for the sale of its products, at Caruthersville, Pemiscot county, Mo., a town some 15 or 20 miles from Steele, which, as said, is the locus in quo of the controversy now vexing the court.
In the year 1921 defendant became an agent of plaintiff at Steele, Mo., for the distribution of its oils at wholesale, and so continued for about one year. Thereafter defendant sold gasoline and oils at retail, buying from plaintiff a part, at least, of such oils, and so forth, until about November, 1926.
In 1925 defendant constructed a filling station and painted thereon two certain signs. These signs each bore the words "Standard Service Station." The background and letters of these signs were repainted some two years ago, in similitude of the color scheme of the plaintiff. The pumps, or some of them, of the defendant, are painted similarly and in the same colors used by plaintiff.
After the construction of defendant's filling station, and for a period of some three years thereafter, plaintiff made efforts to purchase the station of defendant. Failing to complete the deal, it bought a station already in competition with defendant, which it is now and for some 14 months has been operating. This station so purchased by plaintiff is in near proximity to that operated by defendant, being perhaps either just across a street, or diagonally across a street therefrom.
After defendant ceased to deal in gasoline and oils of plaintiff's production, plaintiff demanded of defendant that he remove his signs and other indicia alleged to be in simulation of plaintiff's business. Defendant refused, perhaps in November, 1928, for the last time, to do so, and this action was begun in March, 1929.
Numerous instances of confusion of defendant's business with that of plaintiff were shown on the trial. There was much evidence that the name "Standard," or that word when used in connection with the gasoline and lubricating oils business, has been lifted from the public domain and has taken on a secondary meaning, as wholly applicable to plaintiff and its business, and that the word "Standard" is generally understood, in such business, as referring to plaintiff's goods.
Defendant contends that he uses the word in the name and style of the business carried on by him, as indicative of the class of service which he holds himself out to the public as capable of rendering, and of the service which he does render; that is, that his services and his products, or the products sold by him, are up to date; that they measure up to the criteria established by the Bureau of Standards (and that such Bureau establishes standards of prescribed excellence with regard to gasolines and similar products, which, of course, it does not); and that thus he uses the word in its ordinary sense, or so-called dictionary sense, and not otherwise. And that all this has been done by him without any intent to benefit from the advertising and name of plaintiff in the trade in which both parties are engaged.
There was some evidence as to recent changes in painting on signs, pumps, and building, and as to the caps worn by the service station attendants of the respective parties, which might well be construed as a studied effort to bring about confusion. That there was confusion, the record abundantly shows.
But I am of opinion that it cuts no decisive figure in the case whether defendant's intent here was good or bad; that is to say, as to whether he was engaged in a studied effort so to simulate the business of plaintiff as that confusion would be brought about, and that he would financially profit from such confusion. If plaintiff has, in the oil business, the right within the trade territory into which it has pushed its business, to the exclusive use of the word "Standard," then defendant has no right to use such word, so as to bring about confusion and the mistaking by the casual and unwary purchaser of his goods for the goods of plaintiff.
The action here is bottomed on unfair competition. But the inherent wrong here, *804 as in cases of infringement of either a common-law trade-mark or a registered trade-mark, is, nevertheless identical. In a suit for the infringement of a registered trade-mark, where notice to desist has been given, and notwithstanding such notice infringement has continued, proof of a fraudulent intent to inure plaintiff is not required. Feil v. American Serum Co. (C. C. A.) 16 F.(2d) 88. Such notice to desist is admitted here by defendant, as his frank testimony disclosed on the trial of the case.
If plaintiff by more than 30 years' use of the word "Standard" has caused this word to be lifted from the public domain, and to be applied and understood in the oil business as designating its business, and its gasoline and oils, then no one has the right to use this word in such wise as to cause confusion among customers. Not only does the proof show such lifting of the word "Standard" from the public domain, but the situation is such as at least to fall in the twilight zone, as between evidence of the fact and judicial notice of the fact.
True it is that plaintiff trades under its corporate name of Standard Oil Company, while defendant trades under the name of Standard Service Station. He individually owns the business, though he does not use his individual name, or any part thereof, in such business. So, the question is pertinent whether in the oil business the name Standard Service Station is sufficiently similar to that of plaintiff as to be calculated to deceive the casual or unwary customer. If it is, then defendant, other things being present, is not entitled to use the word "Standard" in his business, or as a part of the designation of his business.
The ruled cases have gone far against defendant on this point. It may even seem, casually, that they have gone too far, even in cases accompanied, as here, by some evidence of studied similitude in aspects other than the mere name alone. Be that, however, as may be, there are cases holding, either that infringement of trade-marks is present, or unfair competition exists, in the use of "Gold Stripe" for "Gold Ribbon" [Lowney Co. v. Chandler & Rudd Co., 56 App. D. C. 248, 12 F.(2d) 189]; "Super-Flash" for "Silver Flash" [Western Oil Refining Co. v. Jones (C. C. A.) 27 F.(2d) 205]; "Milcoa" for "Nucos" [The Best Foods, etc., v. Hemphill, etc., Co. (D. C.) 5 F.(2d) 355]; "White Lily" for "Lily White" [Macy & Co. v. New York Grocery Co., 50 App. D. C. 105, 267 F. 749]; "Queen Brand" for "Queen Make" [Queen Mfg. Co. v. Isaac Ginsberg & Bros. (C. C. A.) 25 F.(2d) 285]; "Wheat Nuts" for "Grape Nuts" [Postum Cereal Co. v. Farmers', etc., Ass'n, 58 App. D. C. 73, 24 F.(2d) 901]; "Oh Jonnie" for "Oh Henry" [Williamson Candy Co. v. Ucano Candy Co. (D. C.) 3 F.(2d) 156].
Cases of this sort, in addition to those above cited, can be cited by the dozens. So far have the courts gone upon the point as to lay down the rule that "there must be such a wide distinction between the dissimilar words as to prevent any possibility of confusion in the use of the marks." Lowney Co. v. Chandler & Rudd Co., supra. Even if there shall exist a doubt, that doubt will be resolved against him who is last in the field. Postum Cereal Co. v. Farmers', etc., Ass'n, supra. Not only is actual confusion banned by the rule, but probability from the facts that such confusion will occur, that is to say, are the facts shown in evidence calculated to produce confusion? There is no better evidence of such probability of confusion than the mere fact that more than a hundred persons have been confused and led to visit defendant's station and there attempt to buy the products of plaintiff. Sweet Sixteen Co. v. Sweet "16" Shop (C. C. A.) 15 F.(2d) 920.
I am of the opinion that I need not seriously consider the question of laches raised by defendant. It is fairly well-settled that before the doctrine of laches will be applied to a case like this, there must exist more than the mere lapse of time; there must appear elements of estoppel, whereby defendant is hurt through the delay to sue. None such worthy of consideration is found in the record here. Moreover, the courts have gone far, perhaps absent estoppel, on this point, also. See McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828; Menendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526; Layton Pure Food Co. v. Church & Dwight Co. (C. C. A.) 182 F. 35, 32 L. R. A. (N. S.) 274.
Tested by the facts here, and the applicable law, I think there is scarcely room for doubt that the injunction herein should issue substantially as prayed. A decree may be presented for entry accordingly.