The STANDARD OIL COMPANY, a corporation; and Sohio Petroleum Company, a corporation, Appellants,

v.

STANDARD OIL COMPANY, a corporation, Appellee.

No. 5506.

United States Court of Appeals
Tenth Circuit.

Jan. 15, 1958.

**68**

Maurice F. Hanning, Cleveland, Ohio (Rufus S. Day, Jr., Paul C. Shafer, Jr., Leland L. Chapman, Cleveland, Ohio, Walter H. Free, New York City, Carleton A. Lathrop, Cheyenne, Wyo., McAfee, Grossman, Taplin, Hanning, Newcomer & Hazlett, Cleveland, Ohio, Brumbaugh, Free, Graves & Donahue, New York City, Lathrop & Lathrop, Cheyenne, Wyo., and Leland L. Chapman, Cleveland, Ohio, of counsel, were with him on the brief), for appellants.

Wallace H. Martin, New York City (Harry B. Henderson, Cheyenne, Wyo., and Walter J. Halliday, Robert Bonynge, New York City, Thomas E. Sunderland, Chicago, Ill., Hunter L. Johnson, Jr., L. Bates Lea, Chicago, Ill., Henderson & Godfrey, Cheyenne, Wyo., Nims, Martin, Halliday, Whitman & Williamson, New York City, of counsel, were with him on the brief), for appellee.

Before PHILLIPS, MURRAH, and BREITENSTEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

Two major, integrated oil companies, each of which is incorporated under the name Standard Oil Company, are here engaged in a bitter fight over the use of trade-marks and trade-names.

Standard Oil Company, an Indiana corporation, obtained an injunction restraining The Standard Oil Company, an Ohio corporation, and its wholly owned subsidiary, Sohio Petroleum Company, also an Ohio corporation, from using the designation "Sohio" in the marketing of petroleum products in a fifteen state midwestern area.[1] The basis of the injunction was that the use of "Sohio" was unfair competition and wrongfully infringed the rights of the plaintiff arising from its prior use within the area of certain "Standard Oil" trade-names and trade-marks.

The trial court dismissed a counterclaim of the defendants seeking a declaratory judgment affirming their right to the use of "Sohio."

To reverse the judgment, defendants urge:

(1) There is no infringement or unfair competition;

(2) The court erred in receiving, and giving probative effect to, evidence of "surveys" and testimony of "public witnesses";

(3) Plaintiff is estopped by laches or delay from enforcing its claimed rights;

(4) The defense of lack of equity and unclean hands bars recovery; and

(5) The court erred in granting a "split injunction."

This case is but another incident in a series of controversies which have arisen over the use of the phrase "Standard Oil" and variations therefrom since the 1911 decision of the Supreme Court dissolving, for anti-trust violations, the combination headed by Standard Oil Company of New Jersey.[2] The dissolution was ordered to

---

1. Hereinafter appellee-plaintiff, Standard Oil Company, an Indiana corporation, will be referred to as plaintiff or as Standard of Indiana. Appellant-defendant The Standard Oil Company, an Ohio corporation, will be referred to as defendant or as Standard of Ohio. Appellant-defendant Sohio Petroleum Company will be referred to as defendant or by name.

2. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619.

prevent monopoly and to accomplish free competition in the oil industry.

Before the dissolution decree, plaintiff, Standard of Indiana, and defendant Standard of Ohio were each a subsidiary of Standard of New Jersey. Under the then leadership of Standard of New Jersey the country was divided into districts, and the oil business in each district was turned over to a subsidiary corporation within the combination, and such subsidiary had the exclusive use of the "Standard" name within its designated territory.[3] Under this method of operation, defendant Standard of Ohio had a common law right to the exclusive use of the "Standard" name and marks within the State of Ohio and plaintiff Standard of Indiana had a similar right in its fifteen state territory. After the dissolution of the combination each of the subsidiaries retained these rights.

Plaintiff was incorporated in Indiana in 1889 under the name "Standard Oil Company" and has used that name continuously ever since. At the time of the dissolution pursuant to the 1911 decision, either the plaintiff or its predecessors in interest were using the "Standard Oil" trade-marks in South Dakota, North Dakota, Missouri, Illinois, Indiana, Minnesota, Wisconsin, Michigan, Kansas, Oklahoma, Iowa and Nebraska. Thereafter plaintiff began to operate in Wyoming, Montana and Colorado and acquired the exclusive right to these trade-marks in those states.[4]

Defendant The Standard Oil Company was incorporated in Ohio in 1870 under that name which it has since used continuously. At the time of dissolution its territory was the State of Ohio and it had the right to the exclusive use of the "Standard" name and trade-marks in that state.

Over the years the plaintiff has developed and used as trade-marks and trade-names the following: "Standard Oil Company," "Standard Oil," "Standard," "SO," "SO Co.," "S O C O" and "Solite." It claims the exclusive right to use these within its territory.

The defendant Standard of Ohio adopted the term "Sohio" as a trade-mark on relatively minor products in 1926. In 1928 it expanded the use of "Sohio" to cover gasoline and other major products and began its use as a synonym for its corporate name. Beginning about 1938 the term was used in the corporate names of such wholly owned subsidiaries as Sohio Producing Company, Sohio Corporation, Sohio Pipe Line Company and the defendant Sohio Petroleum Company. These subsidiaries have been engaged primarily in the exploration, production, and transportation phases of the oil business.

In 1953, defendant Standard of Ohio authorized Gibson Oil Corporation,[5] a dealer and distributor in petroleum products, to sell gasoline, oil and other petroleum products of the defendant in Michigan under the trade-mark "Sohio." Gibson acted under this authorization and began the advertisement, distribution and sale of defendant's products in Michigan. In connection therewith Gibson used the term "Sohio." Plaintiff's vigorous objections were of no avail and this suit was then brought.[6]

After a prolonged trial, the court below made comprehensive findings of fact and conclusions of law. In substance it held that there was infringement and unfair competition, that the use of the term "Sohio" in marketing operations in plaintiff's territory was an inherent fraud on the plaintiff and its rights, that the plaintiff was not barred by laches, estoppel, unclean hands, or other equitable defenses from maintaining the action, and that the defendants should be enjoined from using the term "Sohio" in marketing operations within the plaintiff's territory.

---

3. Cf. Standard Oil Co. of New Jersey v. United States, supra, 221 U.S. at page 77, 31 S.Ct. at page 522.

4. These fifteen states will be referred to herein as "plaintiff's territory."

5. Hereinafter referred to as Gibson.

6. Jurisdiction is based on diversity. There is no question about the existence of the required jurisdictional amount.

Over the years there have been several decisions involving the use of the term "Standard Oil Company."[7] Closely analogous to this case is the decision in Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1, wherein the plaintiff Standard of Indiana succeeded in enjoining the use in its territory of the trade-name "Esso" by a wholly owned subsidiary of the Standard Oil Company of New Jersey. In every case reported at this time the courts have acted to protect the Standard Oil company which had first obtained the right to use the "Standard Oil" name and trade-marks in the area involved.

Defendants concede that they have no right to use in plaintiff's territory the name "Standard Oil Company" with or without "Ohio" and that the plaintiff has the right to the exclusive use within its territory of the terms "Standard," "Standard Oil," and "Standard Oil Company" in connection with petroleum products. Plaintiff makes the same concession of a similar right in the defendant Standard of Ohio to use such terms within its territory in connection with petroleum products.

The trial court found that "almost from the date of its incorporation" the plaintiff has used in its territory its trade-names and trade-marks, including "Standard Oil Company," "Standard Oil," "Standard," "SO," "SO Co.," "S O C O," and "Solite," in the advertisement and sale of its products. It has advertised extensively in newspapers and magazines and on billboards, radio and television.[8] The acceptance of its products is shown by its sales which have increased from $294,500,000 in 1930 to $759,000,000 in 1954. In the petroleum industry in plaintiff's territory the trade-names and trade-marks mentioned above identify the plaintiff and no one else as the source and origin of the products and services on or in connection with which they are used.

Proof of the use by plaintiff of its trade-names and trade-marks is overwhelming. The word "Standard" either alone or in combinations and the letters "SO" either alone or in combinations are used as identifying marks in connection with the great variety of equipment, facilities and products that are a part of the modern oil industry. Only one phase of such use need be particularly mentioned. In 1945, the plaintiff adopted as a common identifying symbol for all outlets offering its products a torch and oval sign. This is an oval with a flaming torch in the center. The flame of the torch extends above the oval. The upper third of the oval is red, the middle third white, and the bottom third blue. The word "Standard" is imprinted in blue on the middle white section. The plaintiff's wide use of this distinctive symbol is conclusively established by the evidence.

The term "Sohio" is derived from "S. O. Ohio." The evidence shows that since the dissolution decree the various Standard Oil companies have been known in trade and financial publications, in the public press, and to the public generally as "S. O. New Jersey," "S. O. Kentucky," "S. O. Indiana," "S. O. California," and "S. O. Ohio." The trial court found that, "In the petroleum world the letters 'S. O.' have always stood for 'Standard Oil.'" "Sohio" is obviously a contraction of "S. O. Ohio." All that has been done is to eliminate one "O." With reference to the "Sohio" name or mark a 1929 publication of the defendant Standard of Ohio said:

"'Sohio' is of course an abbreviation of the full name of our organization, The Standard Oil Company of Ohio. In a degree which

7. See Standard Oil Co. of New York v. Standard Oil Co. of Maine, 1 Cir., 38 F. 2d 677, affirmed as modified, 1 Cir., 45 F.2d 309; Standard Oil Co. of New Mexico, Inc., v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973; Standard Oil Co. of Colorado v. Standard Oil Co.,

10 Cir., 72 F.2d 524, certiorari denied 293 U.S. 620, 55 S.Ct. 216, 79 L.Ed. 708; Standard Oil Co. v. Michie, D.C.E.D.Mo., 34 F.2d 802.

8. In 1930 its sales promotion and advertising expenses amounted to more than $4,-700,000 and in 1954 to over $10,900,000.

exceeds that which characterizes the trade names of other Standard Oil Companies, such as 'Stanolind,' 'Socony,' etc., our trade name of 'Sohio' is not far fetched and *readily suggests to the average layman the formal name of our organization.*" (Emphasis supplied.)

As frequently used, particularly in filling station operations, the word "Sohio" appears in an oval which has a narrow blue border and a white background, on which "Sohio" is printed in red, with elongated red triangles above and below it in the oval. As illuminated, the sign at times appears in a red oval with a thin white border and with "Sohio" appearing in white.

After the adoption of the "Sohio" mark the defendant Standard of Ohio actively promoted and encouraged its use in connection with many phases of its operations. It appeared as part of the names of subsidiary companies, including that of the defendant Sohio Petroleum Company. The use of the term in connection with the corporate activities of the Standard of Ohio has been such that it has become synonymous with the corporate name.

It is admitted that the term "Sohio" has been used in the distribution and sale of defendants' products by Gibson in Michigan, a state within plaintiff's territory. The plaintiff's prompt objection to such use was rejected by the defendants. In their answer the defendants aver an intent and policy to authorize the use of the trade-mark "Sohio," but not the name "Standard Oil Company," "in connection with the distribution and sale of petroleum products in any of the states referred to as 'plaintiff's area.'" Defendants, by way of counterclaim, sought a declaratory judgment to estab-

lish their right to the use of "Sohio" in plaintiff's territory. Thus, we have the clearly framed issue as to whether the use of "Sohio" within the territory of the plaintiff is a violation of any right of the plaintiff.

The basic claim asserted by plaintiff is the right to the exclusive use within its territory of "Standard" and "SO" and the mentioned variations therefrom. The record in this case fully justifies the statement made by this court in Standard Oil Co. of Colorado v. Standard Oil Co., 10 Cir., 72 F.2d 524, 525, a case wherein the appellee-plaintiff Standard of Indiana was also appellee-plaintiff, that:

"In the trade and among consumers of all kinds of petroleum products, in all the states above named, plaintiff's corporate name has been identified with its products, and the names 'Standard,' 'Standard Oil,' and 'Standard Oil Company' have come to have a well-recognized secondary meaning, not only as designating the products of plaintiff, but connoting products of high and distinctive qualities."

While the terms, words, letters, signs and symbols used by the parties are in part trade-marks and in part trade-names,[9] the precise difference is immaterial as the law protects against the appropriation of either upon the same fundamental principles.[10] The law of trade-marks is but a part of the broader law of unfair competition.[11] In Mishawaka, etc., Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 86 L.Ed. 1381, it was said that the protection of trade-marks is the law's recognition of the psychological function of symbols and that one may obtain legal redress against another who poaches upon the commercial magnetism of the symbol which

9. In Standard Oil Co. of New Mexico, Inc. v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, 977, this court said: "Generally speaking, a trade-mark is applicable to the vendible commodity to which it is affixed, and a trade name to a business and its good-will." Cf. Restatement of the Law, Torts, vol. 3, sec. 716, p. 559.

10. American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317.

11. United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 97, 39 S.Ct. 48, 63 L.Ed. 141; Olin Mathieson Chem. Corp. v. Western States C. & M. Co., 10 Cir., 227 F.2d 728, 730.

he has created. The controlling principle is that a person may not pass off his goods or his business as the goods or business of another.[12]

██ Standard of Indiana, the first user of the "Standard" trade-marks in its territory, claims that the use by the defendants of "Sohio" is so confusingly similar to its own trade-marks and trade-names as to constitute infringement and unfair competition. There is confusing similarity "if prospective purchasers are likely to regard it [the offending designation] as indicating the source identified by the trade-mark or trade-name."[13] Factors bearing on the question of confusing similarity as stated in Restatement of the Law, Torts, vol. 3, sec. 729, pp. 592–593, were listed with approval by this court in Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 572. So far as pertinent these factors are:

(1) Degree of similarity in appearance, sound and meaning;

(2) Intent of the defendants in adopting and using the term "Sohio"; and

(3) The degree of care likely to be exercised by purchasers.

After a thirty-five day trial which produced some 5,000 pages of written record covering the testimony of about 130 witnesses and the introduction of over 2,000 exhibits,[14] the trial court found:[15]

(1) " 'SOHIO' is a contraction of Standard Oil Ohio and suggests and signifies Standard Oil and Standard. 'SOHIO' is confusingly similar in meaning to plaintiff's name and trademarks 'Standard Oil' and 'Standard'."

(2) "To the public in plaintiff's territory 'Sohio' means 'Standard Oil' or 'Standard Oil of Ohio.' "

(3) "In appearance, sound and meaning 'SOHIO' is confusingly similar to plaintiff's trademarks 'SO', 'SO Co.', 'S O C O' and 'SOLITE'."

(4) "A substantial number of persons in plaintiff's territory were confused and believed products sold in plaintiff's territory under the trademark 'SOHIO' were products of the plaintiff or of a concern connected with the plaintiff; * * *. There is substantial likelihood of confusion to motorists and other members of the public if the defendants or their affiliates continue to use the term 'Sohio' in marketing operations in plaintiff's territory."

(5) "In selecting the term 'Sohio' for use in marketing operations in plaintiff's territory, it appears that the defendants intended in some way to share in the good will and the developed market of the plaintiff and thereby reap some sort of benefit by deception on the public mind."

(6) "With all the facts known to the defendants, the defendants' determination and persistence in using 'Sohio', a term which was likely to create confusion in the mind of the purchasing public in plaintiff's territory, constituted an inherent fraud upon the plaintiff and its rights."

██ These findings of the trial court will not be disturbed on appeal unless they are clearly erroneous.[16]

12. Standard Oil Co. of New Mexico, Inc. v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, 977; National Nu Grape Co. v. Guest, 10 Cir., 164 F.2d 874, 877; Reynolds & Reynolds Co. v. Norick, 10 Cir., 114 F.2d 278, 281; Western Auto Supply Co. v. Knox, 10 Cir., 93 F.2d 850, 853; cf. McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828.

13. Restatement of the Law, Torts, vol. 3, sec. 728, p. 590.

14. See opinion of trial court, D.C., 141 F.Supp. 876, 878.

15. The numbers and order are not the same as in the formal findings.

16. United States v. Oregon State Medical Society, 343 U.S. 326, 332, 339, 72 S.Ct. 690, 96 L.Ed. 978; United States v. National Association of Real Estate Boards, 339 U.S. 485, 495–496, 70 S.Ct. 711, 94 L.Ed. 1007; United States v. United

Defendants assert:

(1) A visual comparison of the name "Sohio" and defendants' oval sign with plaintiff's marks makes it clear there is no confusing similarity between them.

(2) Confusing similarity which visual comparison shows to be absent is not supplied by the extrinsic evidence of the plaintiff.

(3) There is no evidence of fraud.

■ This court has announced the following controlling rule:[17]

"It is the generally accepted rule that a designation is confusingly similar to a trade-mark if an ordinary prospective purchaser, exercising due care in the circumstances, is likely to regard it as coming from the same source as the trade-marked article. * * * The question is usually one of fact * * * which in some cases may be determined by visual comparison, as where specific differences are so marked that the general appearance could not be confusing, * * * or where it is inconceivable that an ordinary purchaser examining the two labels would be deceived. * * * In other cases extrinsic evidence may be necessary."

Defendants urge that the lack of confusing similarity is conclusively established by a visual comparison of their oval "Sohio" sign with the torch and oval "Standard" sign of the plaintiff and with the plaintiff's other trade-marks

"SO," "SO Co.," "S O C O," and "Solite." They say that the visual differences are much greater than those between "Sky-Rite" and "Sky Mail" as to which this court said in Avrick v. Rockmont, supra, there was little likelihood of confusion and those between "Mother's Best" and "Mother's Pride" which this court held in Nebraska Consolidated Mills v. Shawnee Milling Co., supra, were not confusingly similar.

■ While in some cases, particularly those involving labels, the question of confusing similarity may be determined by visual observation of the words, signs, or symbols involved,[18] the test is not solely such a "juxtapositional comparison."[19] The setting in which the designations are used must be considered.[20] As said in Avrick, supra, 155 F.2d at pages 572–573:

"It is the total effect produced by the designation in the mind of the ordinary purchaser, exercising due care in the market place."

The parties to this case are engaged in identical enterprises, the production, transportation, manufacture and sale of petroleum products. They draw their customers from the same sources. They compete openly and vigorously for business, using similar sales and publicity methods to appeal to the habits of the ordinary consumer. In such activities they must not compete unfairly or infringe upon the rights of the other.

■ Infringement is not to be determined on the basis of the words or

States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746; H. F. Wilcox Oil & Gas Co. v. Diffie, 10 Cir., 186 F.2d 683, 696; United States v. Neel, 10 Cir., 235 F.2d 395, 399; Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A. Cf. Indian Territory Oil & Gas Co. v. Indian Territory Illuminating Oil Co., 10 Cir., 95 F.2d 711, 714; Blue Bell Co. v. Frontier Refining Co., 10 Cir., 213 F.2d 354, 361.

17. Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 572. See also Schneider Brewing Co. v. Century Distilling Co., 10 Cir., 107 F.2d 699, 704; Nebraska Consolidated Mills Co. v. Shawnee Milling Co., 10 Cir., 198 F.2d 36, 38; and Blue Bell Co. v. Frontier Refining Co., 10 Cir., 213 F.2d 354, 362.

18. Cf. Schneider Brewing Co. v. Century Distilling Co., supra; Victor-American Fuel Co. v. Huerfano Agency Co., D.C. Colo., 15 F.2d 578; P. Lorillard Co. v. Peper, 8 Cir., 86 F. 956.

19. Williams Co. v. Lykens Hosiery Mills, Inc., 4 Cir., 233 F.2d 398, 401–402; Italian Swiss Colony v. Ambrose & Co., D.C., 94 F.Supp. 896, 897.

20. Albert Dickinson Co. v. Mellos Peanut Co., 7 Cir., 179 F.2d 265, 269–270.

symbols themselves to the exclusion of other considerations.[21] It is not necessary for similarity to go only to the eye or the ear for there to be infringement.[22] The use of a designation which causes confusion because it conveys the same idea,[23] or stimulates the same mental reaction,[24] or has the same meaning[25] is enjoined on the same basis as where the similarity goes to the eye or the ear. Confusion of origin of goods may be caused alone by confusing similarity in the meaning of the designations employed.[26] The whole background of the case must be considered.[27]

 The real issue is whether the use of "Sohio" in plaintiff's territory has the "total effect" of creating "in the mind of the ordinary purchaser, exercising due care in the market place" the idea that the products marketed under that sign are "Standard Oil" products. If it does, then there is infringement and unfair competition, as the only "Standard Oil" reputation known to the public in the area involved is the reputation of the plaintiff.[28]

Defendants say that "Sohio" is a coined word without inherent meaning. The word is coined but its similarity to S. O. Ohio gives it a definite meaning. The court found, and the record shows, that "In the petroleum world the letters 'S. O.' have always stood for 'Standard Oil.'" In Esso, Inc., v. Standard Oil Co. the Eighth Circuit held that the rights of the plaintiff Standard of Indiana were infringed by the use within its territory of the term "Esso" by a subsidiary of the Standard of New Jersey and said:[29]

"* * * we surmise the value of the brand 'Esso' lies in the fact that it suggests 'Standard Oil.'"

 It is a fair and reasonable inference from the record now before us that the value of the designation "Sohio" lies in the fact that it suggests "Standard Oil." This is established by the extrinsic evidence presented by the plaintiff.[30] There can be no more positive proof of likelihood of confusion than evidence of actual confusion.

Plaintiff produced as witnesses fifteen Michigan consumers who purchased "Sohio" products in Michigan believing them to be products put out by the plaintiff or an affiliate of the plaintiff. More than fifty witnesses, thirty-two of whom were from Colorado and Wyoming, testified as to the likelihood of confusion. Evidence of two surveys showed that out of 1,589 persons interviewed in Michigan, Colorado and Wyoming, 634 thought that the term "Sohio" meant "Standard" or a name which included "Standard."[31]

21. Cf. Marks v. Polaroid Corporation, D.C., 129 F.Supp. 243, 272, affirmed 1 Cir., 237 F.2d 428; Coca-Cola Co. v. Carlisle Bottling Works, D.C.E.D.Ky., 43 F.2d 101, 109.

22. As said by this court in Blue Bell Co. v. Frontier Refining Co., 10 Cir., 213 F. 2d 354, 360: "The question whether a trade-mark is distinctively valid depends upon a consideration of its elements as a whole, not its dissected parts." See American Lead Pencil Co. v. Gottlieb & Sons, C.C.S.D.N.Y., 181 F. 178, 180; Coca-Cola Co. v. Carlisle Bottling Works, D.C.E.D.Ky., 43 F.2d 101, 109.

23. Wonder Mfg. Co. v. Block, 9 Cir., 249 F. 748, 749; Scriven v. North, 4 Cir., 134 F. 366, 372.

24. Williamson Candy Co. v. Ucanco Candy Co., D.C.Del., 3 F.2d 156, 158.

25. Gilmore Oil Co. v. Wolverine-Empire,

69 F.2d 532, 534–535, 21 C.C.P.A., Patents, 916.

26. Hancock v. American Steel & Wire Co., 203 F.2d 737, 740, 40 C.C.P.A. Patents, 931. See also Gagnon Co. v. Bourjois, Inc., 223 F.2d 731, 732–733, 42 C.C.P.A., Patents, 972; Williamson Candy Co. v. Ucanco, supra.

27. Williams v. Lykens Hosiery Mills, supra.

28. Cf. Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1, 7.

29. 98 F.2d 5.

30. This court has recognized the propriety and necessity of extrinsic evidence in such a case as this. See Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 572.

31. The question used in Michigan was: "If you were to stop at a service sta-

Defendants contend that the probative value of the testimony from Colorado and Wyoming witnesses is doubtful because many of them recognized "Carter," "Chevron", "Socony-Vacuum" and "Mobil Gas" as trade-marks of Standard Oil companies.[32] Whether these names are "Standard Oil" names is not an issue in the case. We are concerned solely with whether the use of "Sohio" infringes the plaintiff's rights.

The results of a public recognition survey may properly be received to establish whether trade symbols in question have achieved a degree of public recognition that constitutes secondary meaning [33] and as to whether there is confusing similarity in designations.[34]

The admissibility of the survey evidence is attacked on the ground of hearsay. The persons who conducted the surveys were called as witnesses. Of the persons interviewed, forty-five testified at the trial or by way of deposition. The hearsay objection is not well taken. The persons who did the interviewing testified as to the results of their surveys. Their testimony was offered solely to show what they found. Only the credibility of the persons who took the statements was involved and they were before the court.[35] The technical adequacy of the surveys was a matter of the weight to be attached to them.[36] Elaborate evidence was received from the defense on this point.

Defendants attack the survey evidence and the testimony of the public witnesses upon the basis that the confusion shown thereby results from the proper use of the term "Sohio" in connection with the distribution, advertisement and sale of defendants' products within their recognized territory. They urge that if confusing similarity can be based upon a proper association of "Sohio" with "Standard" in Ohio, then each Standard company will have to withdraw into its own area and the public will be deprived of effective competition among such companies.

The argument is not persuasive. The record abounds with evidence that over the years in its territory Standard of Ohio has consistently followed the policy of associating the term "Sohio" with Standard of Ohio and its products. Some of the newspaper, radio and television advertising which affirmatively shows such an association "spills over" into the territory of the plaintiff. Such "spill overs" are unavoidable under modern conditions and would be unimportant if defendants did not sell or offer to sell their products under a confusingly similar designation in the plaintiff's territory.[37] The trouble is that they do sell

tion in Michigan displaying the name SOHIO as shown here, what oil company would you think put out the gas and oil sold there?" In Colorado and Wyoming the reference to Michigan was eliminated. In each instance the person interviewed was shown a photograph of the "Sohio" oval sign displayed at a Gibson service station in Michigan.

32. "Carter" is a trade-mark used by Standard of New Jersey. "Chevron" is a trade-mark of Standard of California. "Socony-Vacuum" and "Mobil Gas" are trade-marks of Socony Mobil Oil Co., formerly Standard of New York.

33. Household Finance Corp. v. Federal Finance Corp., D.C., 105 F.Supp. 164, 166.

34. People v. Franklin Nat. Bank, 200 Misc. 557, 105 N.Y.S.2d 81, 90–91; Cf.

Sears, Roebuck & Co. v. All States Life Insurance Company, 5 Cir., 246 F.2d 161, 171.

35. See United States v. 88 Cases, More or Less, Containing Bireley's Orange Beverage, 3 Cir., 187 F.2d 967, 974; Household Finance Corp. v. Federal Finance Corp., D.C., 105 F.Supp. 164, 166. Sears, Roebuck & Co. v. All States Life Insurance Co., 5 Cir., 246 F.2d 161, 171, is not contra because there the "author" of the survey was called to testify as to what the "interviewers" told him. This was hearsay. In the case under consideration the "interviewers" were called as witnesses.

36. Cf. United States v. 88 Cases etc., supra.

37. Cf. Fairway Foods, Inc. v. Fairway Markets, Inc., 9 Cir., 227 F.2d 193, 196.

their products under the "Sohio" designation in Michigan, a part of the plaintiff's territory, in direct competition with the plaintiff. Thus, defendants take advantage of the situation which they have created. Under such circumstances they are in no position to say that the testimony of the public witnesses showing confusion because of association of terms is improper.

The recognition of confusion resulting from association does not deprive defendants, or any other Standard company, of the right to do business in the territory of another Standard company. All it means is that in such activities there may be no infringement of the trade-marks and trade-names of the Standard company first established in the particular area.[38]

■ Defendants vigorously contest the finding of the trial court that their use of "Sohio" "constituted an inherent fraud upon the plaintiff and its rights." They say that in good faith they adopted and have used a unique technical trademark without inherent meaning. The record does not sustain their argument. "Sohio" originated from the phrase "S. O. Ohio." Company publications show that it was intended as an abbreviation of Standard of Ohio. The term was too valuable to be "wasted on" a minor product. As early as 1929 the Standard of Ohio's publication "The Sohioan" boasted that "Sohio" "suggests to the average layman the formal name of our organization." In 1949, defendants' counsel wrote plaintiff's counsel, saying: "Having gone as far as we have with the use of this name [Sohio], the compa-

ny is determined to continue to use it in the future." In 1953, the company began the distribution and sale of its products by Gibson in plaintiff's territory at a point where there was an uncontrollable "spill over" of its advertising. Gibson filling station attendants told prospective customers that "Sohio" gasoline was a "Standard Oil" product. The defendants' pleadings in this action show an intent to use "Sohio" in marketing petroleum products in competition with plaintiff in plaintiff's territory. The natural and probable result of the use of "Sohio" in plaintiff's territory for marketing operations is to palm off the goods of the defendants as the goods of the plaintiff. Under such circumstances fraudulent intent will be presumed.[39]

■ The record shows that there is such a confusing similarity between defendants' designation "Sohio" and the designations of the plaintiff that the total effect of the use by defendants within plaintiff's territory of "Sohio" is to produce in the mind of the ordinary purchaser, exercising due care in the market place, confusion as to the origin of the goods identified by such designation. The record further shows that by their use of the "Sohio" designation in marketing petroleum products in plaintiff's territory defendants intended to create and take advantage of this confusion of origin. Such action is unfair competition and wrongfully infringes upon the rights of the plaintiff.

■ Defendants contend that plaintiff is estopped by delay or laches from enforcing its rights. The question of laches is primarily addressed to the

38. In Esso, Inc., v. Standard Oil Co., 8 Cir., 98 F.2d 1, 8, it was said: "It is finally urged that the decree appealed from, granting the injunction against the defendant, will obstruct the operation of the dissolution decree. Plaintiff is not asking that defendant be enjoined from entering its trade territory, but that it be enjoined from infringing plaintiff's trade-marks, and from unfair competition. The dissolution decree established these companies as separate, individual and independent corporations. It was

not the purpose of the decree to prevent the application of the established principles and rules of unfair competition to them. No such question was there involved and these companies come into a court of equity on the questions here involved, unhampered by the decree of dissolution."

39. Queen Mfg. Co. v. Isaac Ginsberg & Bros., Inc., 8 Cir., 25 F.2d 284, 288. Cf. McLean v. Fleming, 96 U.S. 245, 253–254, 24 L.Ed. 828.

discretion of the trial court.[40] The basis of the claim of laches is that for many years, beginning in the 1930's, defendant Standard of Ohio used "Sohio" in exploration, production, transportation, and like operations which it and its subsidiaries conducted in the plaintiff's territory. Plaintiff had knowledge of such use and did not object thereto. However, the harm to the plaintiff comes from the use of "Sohio" in marketing and when it was used in that connection in plaintiff's territory, plaintiff promptly objected.

In the late 1940's, Sohio-Fleetwing Corporation, a wholly owned subsidiary of defendant Standard of Ohio, began to market gasoline and other petroleum products in the Detroit, Michigan, area, but did not use "Sohio" except as part of its corporate name. As these activities were within plaintiff's territory, it promptly objected to the use of "Sohio." An exchange of correspondence between counsel for the parties took place. While the matter was under investigation by plaintiff, Sohio-Fleetwing Corporation sold all of its Michigan properties and retired from operations within plaintiff's territory.

The next use of "Sohio" in plaintiff's territory for marketing purposes came in 1953 when Standard of Ohio contracted with Gibson for Gibson to distribute and sell in Michigan petroleum products of the defendants under the designation "Sohio." Such action was followed by the institution of this suit on May 5, 1954.

Acquiescence in the use of "Sohio" in production operations is not acquiescence in such use in marketing operations. The actions of the defendants were progressive encroachment through a planned campaign to familiarize the public with the term "Sohio." Such a course does not tend to arouse hostile action until it is fully developed.[41] The full development came with the use of "Sohio" in marketing operations within plaintiff's territory. Defendants' persistence in the use was not innocent. When its actions culminated in actual unfair competition through a confusingly similar designation, the plaintiff acted promptly. Laches is no defense.[42]

■ Defendants say that the plaintiff is barred by lack of equity from enforcing its claim. The theory is that through the use of its torch and oval sign and of the trade-name "Stanolind" plaintiff is wrongfully competing with other Standard companies outside of its accepted territory.

In its fifteen state area plaintiff uses the distinctive torch and oval sign with the word "Standard" imprinted in the middle. To the west of that area plaintiff competes with Standard of California through its subsidiary Utah Oil Refining Company and uses the torch and oval sign with the term "Utoco" in place of "Standard." In the South plaintiff competes with Standard of Kentucky and Standard of New Jersey through its subsidiary Pan-Am Southern Corporation and uses the torch and oval sign with the term "Pan-Am" in the center. In Ohio and other parts of the East plaintiff competes with defendants and with Standard of New Jersey through its subsidiary The American Oil Company under the trade-mark "Amoco" which appears in an oval sign.

The term "Stanolind" has never been used by the plaintiff on a major product. Its subsidiaries Stanolind Oil Purchasing Company and Stanolind Oil & Gas Company are engaged in production and oil acquisition activities. The latter subsidiary did sell some liquefied petroleum gas to customers in Ohio but when this

**40.** Czaplicki v. Hoegh Silvercloud, 351 U.S. 525, 534, 76 S.Ct. 946, 100 L.Ed. 1387; Pacific Royalty Company v. Williams, 10 Cir., 227 F.2d 49, 55.

**41.** O. & W. Thum Co. v. Dickinson, 6 Cir., 245 F. 609, 623, quoted in Independent Nail & Packing Co. v. Strong-hold Screw Products, Inc., 7 Cir., 205 F. 2d 921, 927.

**42.** McLean v. Fleming, 96 U.S. 245, 257, 258, 24 L.Ed. 828; Menendez v. Holt, 128 U.S. 514, 523, 9 S.Ct. 143, 32 L.Ed. 526.

matter was called to the attention of plaintiff's officials such activities were stopped and a new company, Tuloma Gas Products Company, was organized to handle the liquefied petroleum gas business.

We are concerned in this case with the use of "Sohio" by the defendants in their marketing operations in plaintiff's territory, not with the use of "Utoco," "Pan-Am," "Amoco" or "Stanolind" in the territory of some Standard company other than the plaintiff. Plaintiff's use of those designations does not affect the equitable relations of the parties to this suit.[43] The defendants have not shown any intent to deceive with, or deception resulting from, the designations "Utoco," "Pan-Am," "Amoco" or "Stanolind." This is not a case where a plaintiff seeks to protect the fruits of his own misconduct from acquisition by another wrongdoer. On the basis of the record the trial court properly found that the activities and designations of the plaintiff "have not caused any confusion with any other Standard Oil Company."

█ Defendants complain because plaintiff has taken no action against the use within its territory by Socony Mobil Oil Company, a successor of Standard of New York, of its term "Socony" which often appears with a distinctive "Flying Red Horse" sign. Plaintiff insists, and the court found, that the operations of Socony Mobil Oil did not result in any confusion with plaintiff's products in the public mind. Even if this were not so, defendants could not excuse their wrongful acts on the ground that another had committed a similar wrong.

█ Finally, it is urged that the court granted an improper "split injunction." This refers to the fact that the decree enjoins the use of "Sohio" in marketing operations in plaintiff's territory but does not enjoin its use in connection with other operations. Defendant Standard of Ohio says that it is an integrated oil company[44] and that one branch of its business cannot be divorced from another branch. This argument is but a reassertion of the contention that acquiescence of plaintiff in the use of "Sohio" in activities other than marketing creates an estoppel against the claim of infringement on account of the use of "Sohio" in marketing operations. Defendants contend that if plaintiff is not entitled to an injunction against all uses of "Sohio" in its territory, it is not entitled to any injunction.

The defendants rely on Standard Oil Co. of New Mexico v. Standard Oil Co. of California, supra, wherein this court approved a broad injunction restraining the use of the "Standard" name in all respects. That suit involved a new company. It was not a trade-mark infringement case but rather "in the nature of a bill quia timet to enjoin the threatened unlawful use of a corporate name."[45] The court said that under the circumstances of that case the plaintiff was entitled to the broad protection which the decree gave it.[46] We are concerned with the circumstances of this case wherein the court properly found that there was no actual confusion resulting from the use of "Sohio" in exploration, production, transportation and like activities.

Rule 54(c) of the Federal Rules of Civil Procedure provides that a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled. Plaintiff Standard of Indiana was entitled to an injunction against the use of "Sohio" in marketing operations in its territory. It was not entitled to any broader injunction. The defendants may not complain because the

---

43. Cf. Ohio Oil Co. v. Sharp, 10 Cir., 135 F.2d 303, 307; Olin Mathieson Chem. Corp. v. Western States C. & M. Co., 10 Cir., 227 F.2d 728, 731.

44. An integrated oil company is one which operates in all three of the principal branches of the oil business, viz.: production, manufacture, and distribution and sale. Standard Oil Co. of New Mexico v. Standard Oil Co. of California, 10 Cir., 56 F.2d 973, 976.

45. 56 F.2d 975.

46. 56 F.2d 980.

injunction was limited in a manner which the record requires.

This case was vigorously contested and carefully tried. None of the fact findings of the trial court are clearly erroneous. Its conclusions of law meet with our approval. The judgment is affirmed.