[No. 5700–3–III.   Division Three.   February 5, 1985.]

NORMAN BISHOP, ET AL, *Appellants,* v. ARTHUR
E. HANENBURG, ET AL, *Respondents.*

*Mark J. Conlin,* for appellants.

*Melvin H. Champagne,* for respondents Hanenburg.

*Robert E. Anderson,* for respondents Rile, et al.

THOMPSON, J.—Norman and Carolyn Bishop appeal the dismissal of their trade name infringement complaint seeking to enjoin the use of the name "Window World" by a similar drapery business. We reverse.

In 1971, Carolyn Bishop began a drapery business in Spokane and obtained a registered tax number from the State of Washington under the name of Carolyn's Window World. Operating by referral rather than conventional advertising, the Bishops carried on a wholesale and retail custom drapery business from a shop at their residence.

The Bishops opened a checking account, obtained loans, had business cards printed, and were listed in Polk's directory and the Dun & Bradstreet directory. By 1976, the term "Carolyn's" had been deleted from the bank checking account and from the Polk's listing, and the name under which the Bishops operated the business was Window World.

In 1980, after checking the phone book yellow pages, and various public records, the Hanenburgs opened a drapery business under the name Window World. They filed the name Window World with the State, ordered signs, stationery, and advertising, and set an opening date of November 28, 1980. Just prior to the opening, Mrs. Bishop phoned the Hanenburgs informing them of the name duplication, but nevertheless, the Hanenburgs opened and undertook to do business under the same name. Shortly thereafter the Bishops began receiving bills from Stevens Fabrics in Minneapolis for fabric and supplies ordered by the Hanenburgs.

The Bishops filed a complaint seeking to enjoin the Hanenburgs and their successors Ida Rile and Norma Lesher from continuing to use the Window World trade name and claiming damages from trade name infringement, and Consumer Protection Act violations. The trial court denied the injunction, dismissed the infringement and consumer claims, and assessed attorney fees and costs against the Bishops. The Bishops appeal only the denial of the injunction.

The Bishops contend the trial court erred in applying the trade name infringement test to the facts. In considering a trade name infringement claim, eight guidelines have been adopted in Washington and are as follows:

"[1] The right to use a particular name as a trade name belongs to the one who first appropriates and uses it in connection with a particular business."

"[2] A person, whether individual or corporate, may not use any name, not even his or its own, which is the distinctive feature of a trade name already in use by another, if such use by the one person tends to confuse, in the public mind, the business of such person with that of the other."

"[3] The prior user may be entitled to relief regardless of actual fraud or intent to deceive on the part of a subsequent appropriator."

"[4] To acquire the right to use a particular name, it is not necessary that the name be used for any considerable length of time. It is enough to show that one was in the actual use of it before it was begun to be used by another."

"[5] A trade name may be abandoned or given up by the original appropriator, and, when it is so abandoned or given up, any other person has the right to seize upon it immediately, and make use of it, and thus acquire a right to it superior not only to the right of the original user, but of all the world."

"[6] A trade name, in order to be an infringement upon another, need not be exactly like it in form and sound. It is enough if the one so resembles another as to deceive or mislead persons of ordinary caution into the belief that they are dealing with the one concern when in fact they are dealing with the other."

"[7] The rule is no different when the name, or some part thereof, is a geographical name, or contains descriptive words which have acquired a secondary meaning."

"[8] Prior right to the use of a name will be protected by injunction against others using it unfairly."

*Money Savers Pharmacy, Inc. v. Koffler Stores (Western) Ltd.,* 37 Wn. App. 602, 606–07, 682 P.2d 960 (1984) (quoting *Holmes v. Border Brokerage Co.,* 51 Wn.2d 746, 750–51, 321 P.2d 898 (1958)); *Foss v. Culbertson,* 17 Wn.2d 610, 136

P.2d 711 (1943); *Seattle St. Ry. & Mun. Employees Relief Ass'n v. Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees,* 3 Wn.2d 520, 101 P.2d 338 (1940).

The Bishops focus on an alleged misapplication of the test, particularly with regard to appropriation, confusion, fraud, and injunctive relief.

The trial court concluded that "while there was a first use by the Plaintiffs, there was not a first appropriation. . . . That appropriation is something more than a mere usage. It includes use in the public arena. To appropriate a name, one must enter into the public arena."

■ The nature of an appropriation in the context of trade name infringement was examined in *Rosenburg v. Fremont Undertaking Co.,* 63 Wash. 52, 54–56, 114 P. 886 (1911), where the court explained:

> The right to use a particular name as a trade–name belongs to the one who is first to appropriate it and use it in connection with a particular business. To acquire the right to use a particular name it is not necessary that the name be used for any considerable length of time. In a contest between two individuals over such right, therefore, it is enough to show that the one was in the actual use of it before it was begun to be used by the other. . . .
>
> . . . The rule is not rested on the principle that the user has a property in a name, but on the principle that it is a fraud on both the person who has established a trade which he carries on under a given name, and the public who trade with the person on the faith of the name, to allow another to assume the same or a similar name for the purpose of selling his own goods or inducing people to trade with him under the belief that they are purchasing the goods of, or trading with, the person who established the name.

(citing *Eastern Outfitting Co. v. Manheim,* 59 Wash. 428, 110 P. 23 (1910)).

Based on actual business volume, directory listings, tax reports, checking accounts and business cards, appropriation by the Bishops did in fact take place in their operation of the business and establishment of a trade under the given name Window World.

■ The "public arena" reference is more germane to the issue of confusion rather than appropriation. The trial court appropriately analyzed the publicity issue when examining whether subsequent use of the name Window World would create confusion in the public mind. Proof of actual confusion is not required, *Holmes,* at 750–51, but rather the "universal test question is whether the public is likely to be deceived." *Evergreen State Amusement Co. v. S.F. Burns & Co.,* 2 Wn. App. 416, 423, 468 P.2d 460, *review denied,* 78 Wn.2d 993 (1970) (quoting *Olympia Brewing Co. v. Northwest Brewing Co.,* 178 Wash. 533, 35 P.2d 104 (1934)); *Money Savers,* at 607–08.

The Bishops set forth specific instances where an out–of–state supplier mistakenly billed them for orders made by the Hanenburgs. Misdirected and improperly addressed mail sent by suppliers has in fact constituted sufficient evidence of confusion in Washington. *See Puget Sound Rendering, Inc. v. Puget Sound By–Products,* 26 Wn. App. 724, 615 P.2d 504 (1980).

Not only is a supplier a member of the public, but if a supplier is confused by similar businesses with identical names, the consuming public is likely to be similarly confused. The evidence is clear that the Bishops were both involved full time in their wholesale and retail operation with as much work as they could handle. Their retail customers were obtained through word of mouth, references, the distribution of approximately 2,000 business cards over the period of the existence of the business, and, quite probably, their listing in the Polk's directory.

Although the dimension of the public sector coming in contact with the Bishops may have been more limited than that achieved through mass advertising and telephone directory listings, the public was nevertheless impacted by their business. The likelihood of confusion because of identical names in a similar business is substantial as is the potential to deceive or mislead. Persons of ordinary caution

may believe they are dealing with one of the parties when in fact they are dealing with the other. *Money Savers*, at 609.

The trial court's finding of lack of bad faith or fraud is challenged as irrelevant to the determination of infringement. This is true, but the finding is relevant to an analysis of the scope of injunctive relief. *Tradewell Stores, Inc. v. T.B. & M., Inc.*, 7 Wn. App. 424, 429–30, 500 P.2d 1290 (1972).

The grant of injunctive relief in a trade name infringement action requires the examination of four factors:

(1) whether the trade name was vaguely descriptive or clearly nondescriptive, *i.e.*, the "appropriability" of the name; (2) the originality of the name; (3) whether or not the defendant acted in good faith; and (4) the extent of competition between plaintiff's and defendant's businesses.

*Puget Sound*, at 729; *Tradewell*, at 428–30.

As noted above, "Window World" was appropriable and in fact appropriated by the Bishops. No evidence was presented indicating the name had been used prior to 1972 in the Spokane market area. Therefore, it represented an original trade name. Although the trial court found the Hanenburgs' ordering of signs, stationery and advertising prior to the telephone notice of the problem with the business name to be irreversible, the question remains as to bad faith in continuing the use after notice. Finally, the extent of competition between the businesses is potentially significant. For example, as was indicated in the Hanenburgs' testimony, during an interim period of time the Bishops were on vacation and not providing service to Joel's, Inc., the Hanenburgs solicited and secured the account. As such, injunctive relief is appropriate in this case.

Finding the Bishops have satisfied a showing of trade name infringement, we reverse and remand for a trial court

determination of whether a total change or partial modification of trade name is in order.

McINTURFF, A.C.J., and MUNSON, J., concur.