POWDER RIVER OIL COMPANY, a Wyoming corporation, and W.R. "Bob" Gibson, d/b/a Powder River Oil Company, Appellants (Plaintiffs),

v.

POWDER RIVER PETROLEUM CORPORATION, a Delaware corporation, and Walter Van Norman, Jr., Appellees (Defendants).

No. 91–119.

Supreme Court of Wyoming.

April 16, 1992.

Richard R. Wilking of Schwartz, Bon, McCrary, & Walker, Casper, for appellees.

Before URBIGKIT, C.J., and THOMAS, CARDINE, MACY and GOLDEN, JJ.

URBIGKIT, Chief Justice.

This case involves application of the Wyoming common law of trade name infringement and unfair competition. Appellants, W.R. Gibson (Gibson) and Powder River Oil Company, Inc., filed suit against appellees, Walter Van Norman, Jr. (Van Norman) and Powder River Petroleum Corporation, Inc., seeking injunctive relief preventing the use of a confusing and similar trade name. The trial court granted summary judgment in favor of Powder River Petroleum Corporation finding that actual confusion among the customers of Powder River Oil Company was not established. Powder River Oil Company appeals the order granting summary judgment. We reverse and remand.

## I.

## ISSUES

Powder River Oil Company asks whether the trial court erred

(1) in determining [appellants] have no right to relief absent a showing of confusion among the parties' customers as to the source of goods or services and (2) in concluding [appellants] have no redress from the Secretary of State's grant to [appellees] of the authority to do business under a name demonstrated to be deceptively similar to the trade name and corporate name under which [appellants] conduct the same business.

Powder River Petroleum Corporation claims only one issue is before this court:

[W]hether [the trial court judge] erred when he determined that there were no genuine issues of material fact and that Appellees were entitled to judgment as a matter of law.

We consider these issues during the course of a unified discussion.

Morris R. Massey of Brown & Drew, Casper, for appellants.

## II.

## FACTS

Gibson conducts an oil and gas exploration and production business under the name Powder River Oil Company. Gibson began using the trade name in 1961. In 1963, Gibson filed a Wyoming trade name registration for Powder River Oil Company. The business entity itself was actually incorporated in 1968 under Wyoming law as Powder River Oil Company.

Powder River Oil Company acquires oil and gas leases. After additional geology work, Powder River Oil Company determines which leases have sufficient potential for an exploratory well. Powder River Oil Company then contributes the geology expenses and lease acquisitions to a drilling partnership formed with outside investors. Powder River Oil Company also purchases producing wells from which oil or gas production is sold to processors. Powder River Oil Company's operations are presently concentrated within the geographic area of Wyoming known as the Powder River Basin, particularly Campbell and Crook Counties.

Van Norman is the president of Powder River Petroleum Corporation a closely held family corporation. Powder River Petroleum Corporation had been incorporated in 1988 under the Delaware state corporate code. Despite Powder River Oil Company's protests over the similarity of the names, Powder River Petroleum Corporation, following Delaware incorporation, secured authority to register its trade name with the Secretary of State as a foreign corporation doing business in Wyoming. Prior to 1988, the Van Norman family oil business in Wyoming had not used the name Powder River Petroleum Corporation.

Powder River Petroleum Corporation acquires oil and gas leases and, after drilling sites are selected, finances the drilling program in-house without the utilization of an outside investor program. The oil or gas produced is also sold to processors. Powder River Petroleum Corporation's operation area is presently contained within Al-bany and Niobrara Counties in the southeastern portion of the Powder River Basin.

Seventeen months after Powder River Petroleum Corporation registered to do business in Wyoming, Powder River Oil Company filed this lawsuit seeking a permanent injunction prohibiting use of the name Powder River Petroleum Corporation. Powder River Oil Company complained that the use of a deceptively similar trade name caused unfair competition, confusion and threatened the business reputation of Powder River Oil Company. After one year of discovery proceedings, Powder River Petroleum Corporation moved for summary judgment contending that trade name infringement could not exist as a matter of law unless "customers" were confused. Following a hearing, the trial court granted summary judgment in favor of Powder River Petroleum Corporation with a decisional finding that the similarity of names had created confusion among suppliers of the two companies, but not as required by law among "customers."

## III.

## DISCUSSION

Disputes between parties involving the validity of trademarks or trade names and infringement can rarely be determined satisfactorily on a motion for summary judgment because full development of the facts at trial is particularly important for a proper resolution. Defined fact-finding for dispositive decision is required. *Frederick Warne & Co., Inc. v. Book Sales Inc.*, 481 F.Supp. 1191 (S.D.N.Y.1979). However, when appellate review of summary judgment is required, this court proceeds on a frequently stated ordered course. "Summary judgment is proper only when there are no genuine issues of material fact and the prevailing party is entitled to judgment as a matter of law." *McDonald v. Mobil Coal Producing, Inc.*, 789 P.2d 866, 869 (Wyo.1990), *reh'g* 820 P.2d 986 (Wyo.1991). *See* W.R.C.P. 56(c). The court considers the record from the viewpoint most favorable to the party opposing the motion, giving all favorable inferences to be drawn from the facts contained in affidavits, depo-

sitions and other proper material appearing in the record to the opposing party. *Roth v. First Sec. Bank of Rock Springs, Wyo.*, 684 P.2d 93 (Wyo.1984) (*quoting Reno Livestock Corp. v. Sun Oil Co. (Delaware)*, 638 P.2d 147 (Wyo.1981)). Summary judgment eliminates the expense and burden of a formal trial when only questions of law are involved; however, this court must be persuaded that no material facts are in dispute and the trial court's judgment was correct as a matter of law. *Fiscus v. Atlantic Richfield*, 773 P.2d 158 (Wyo.1989). We accord no deference to and are not bound by the trial court's decisions on issues of law. *True Oil Co. v. Sinclair Oil Corp.*, 771 P.2d 781 (Wyo. 1989). " 'Summary judgment is notoriously inappropriate for the determination of claims in which issues of intent, good faith and other subjective feelings play dominant roles.' " *Cordova v. Gosar*, 719 P.2d 625, 635 (Wyo.1986) (quoting *Croxen v. United States Chemical Corporation of Wisconsin*, 558 F.Supp. 6, 7 (N.D.Iowa 1982)).

■ The theoretical origin of this case lies in the body of common law known as trade name infringement. Trade name infringement is directly related to trademark infringement with the historical root of each lying in the desire of tradesmen to identify the origin of goods. *See* George J. Alexander, *Commercial Torts* § 1.3 (2d ed. 1988). Ultimately, trade names and trademarks are accorded similar protection by law being subsets of the broad topic of unfair competition and all resting on the same general principle. *Bernstein v. Friedman*, 62 Wyo. 16, 160 P.2d 227 (1945); *Standard Oil Company v. Standard Oil Company*, 252 F.2d 65 (10th Cir.1958). These classifications should be considered as a continuum of rights recognized by common law and often by statute protecting competition within the business marketplace. *See* 1 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 1:2 (2d ed. 1984). Unfair competition originated as a commercial tort, but now represents an independent body of law. Restatement (Second) of Torts §§ 708–816 introductory note at 1 (1979).[1]

■ These name contestants have spent extensive litigative time and effort debating the effect of the various registrations of trade or corporate names with the Wyoming Secretary of State. Powder River Oil Company argues its prior registration, first as a trade name then as a corporate name, entitles it to special protection. Powder River Petroleum Corporation responds by saying that the Secretary of State's decision to allow registration of its corporate name cannot be contested at this point. Both arguments are without merit. Wyoming accepts the majority rule that administrative acceptance of a corporate name by a state agency will be given no judicial weight in litigation over rights to the name. *Plains Tire and Battery Co. v. Plains A to Z Tire Co., Inc.*, 622 P.2d 917 (Wyo.1981); *First Nat. Bank of Lander v. First Wyoming Sav. and Loan Ass'n*, 592 P.2d 697 (Wyo.1979); 1 J. Thomas McCarthy, *supra*, at § 9:3. This rule is rooted in sound policy.

> It can no longer be argued that in allowing incorporation under its laws, a state thereby intends to license the commission of what would otherwise be a tortious act. In other words, a state does not pass upon the legality of a corporate name by merely permitting incorporation under that name.

*Hulburt Oil & Grease Co. v. Hulburt Oil & Grease Co.*, 371 F.2d 251, 254 (7th Cir. 1966), *cert. denied* 386 U.S. 1032, 87 S.Ct. 1482, 18 L.Ed.2d 594 (1967). The legal rights protected by common law infringement and unfair competition actions flow from prior use of the trade name in com-

---

**1.** The American Law Institute project to draft a separate Restatement of the Law of Unfair Competition has resulted in three Tentative Draft volumes. Restatement (Third) of Unfair Competition §§ 1–8 (Tentative Draft No. 1, 1988); Restatement (Third) of Unfair Competition §§ 7, 9–27 (Tentative Draft No. 2, 1990); Restatement (Third) of Unfair Competition §§ 21, 28–37 (Tentative Draft No. 3, 1991). The goal of the project is to attempt to integrate traditional common law rules relating to trademark and trade name protection with statutory formulations. Restatement (Third) of Unfair Competition, Reporters' Memorandum to the Members of the Institute at xvii (Tentative Draft No. 3, 1991).

merce with protection limited to the territory in which the use is established. *First Nat. Bank of Lander*, 592 P.2d at 704; 2 J. Thomas McCarthy, *supra*, at § 22:1. Therefore, this appeal must be treated as a common law action for trade name infringement and unfair competition. Consideration of this court will be given to the appropriateness of summary judgment decision on either infringement or unfair competition controversies.

The boundaries for Wyoming infringement and unfair competition laws were developed by Chief Justice Blume in *Bernstein*. The party seeking protection proved a secondary meaning had been established in the trade name "Western Ranchman Outfitters" and injunctive relief was affirmed preventing the use of Western Outfitters by a competitor. *Bernstein*, 160 P.2d at 228, 234. The analytical framework conjunctively considered: (a) the character of the terms used in the trade name seeking protection; (b) the strength of that trade name; (c) the necessity for "secondary meaning" for geographic or descriptive trade names; (d) the likelihood of confusion created by the challenged trade name to prove infringement; and finally (e) a finding of express or implied fraud on the part of the business owner who infringed on the trade name seeking protection to prove unfair competition. *Id.* at 228–34. Subsequent opinions of this court applied the rules and analysis of *Bernstein* to trade name disputes involving tire stores, financial institutions and non-profit corporations. *Plains Tire and Battery Co.*, 622 P.2d 917; *First Nat. Bank of Lander*, 592 P.2d 697; *Wyoming Nat. Bank of Casper v. Security Bank & Trust Co.*, 572 P.2d 1120 (Wyo.1977); *Debruyn v. Golden Age Club of Cheyenne*, 399 P.2d 390 (Wyo. 1965). We apply the *Bernstein* analysis to the present facts to determine whether Powder River Petroleum Corporation was entitled to summary judgment as a matter of law.

## A. The Character Of The Terms

The trade name Powder River Oil Company, which appellants are trying to protect, is a composite formed from the combination of the geographic term "Powder River" with the descriptive term "Oil" and the generic term "Company." Similarly, the trade name Powder River Petroleum Corporation is a composite of geographic, descriptive and generic terms. The trade names do not appear to be deceptive or confusing on their face; therefore, we determine the character and strength of the name seeking protection, Powder River Oil Company, in the relevant market area. *Plains Tire and Battery Co.*, 622 P.2d at 921.

 The validity of a composite trade name is not judged by an examination of its component parts; rather, the validity is determined by viewing the trade name as a whole. *California Cooler, Inc. v. Loretto Winery, Ltd.*, 774 F.2d 1451 (9th Cir.1985). Words which would not qualify for trade name protection used individually may become subject to infringement when used in combination. *Union Carbide Corp. v. Ever–Ready Inc.*, 531 F.2d 366 (7th Cir.), *cert. denied* 429 U.S. 830, 97 S.Ct. 91, 50 L.Ed.2d 94 (1976). Dissecting a composite trade name which includes geographic and descriptive terms to determine if the name is primarily geographical is not appropriate. *Plains Tire and Battery Co.*, 622 P.2d at 923; 1 J. Thomas McCarthy, *supra*, at § 14:6. "The total commercial impression created by a composite [name] may be merely arbitrary or suggestive even though its separate parts [are] geographically descriptive." 1 J. Thomas McCarthy, *supra*, at § 14:6.

 The trial court erred in evaluating this case as one which would determine the exclusive use of "Powder River" in connection with the oil and gas business. Powder River is a geographical term which, in common use to designate a section of the country cannot be appropriated by anyone for exclusive use as a trade name. *Wyoming Nat. Bank of Casper*, 572 P.2d at 1123. While a geographic term alone sometimes carries a secondary meaning suggesting an element of quality, the trial court made no such specific finding in this case. *Elgin Nat. Watch Co. v. Illinois Watch Case Co.*,

179 U.S. 665, 21 S.Ct. 270, 45 L.Ed. 365 (1901); 3 Rudolf Callmann, *The Law Of Unfair Competition Trademarks and Monopolies* § 18.15 (4th ed. 1983). The composite trade name, Powder River Oil Company, must be evaluated in its entirety to assess its strength.

•

### B. The Strength Of The Trade Name

 The strength of a trade name refers to its ability to be protected from infringement and whether proof of secondary meaning is required. Four classes of names are generally recognized: (1) generic; (2) descriptive, which includes geographically descriptive names; (3) suggestive; or (4) arbitrary, also called fanciful. 1 J. Thomas McCarthy, *supra*, at §§ 4:2, 4:4, 11:1. The court in *American Television and Communications Corp. v. American Communications and Television, Inc.*, 810 F.2d 1546, 1548–49 (11th Cir.1987) summarized the definitions commonly applied to the classifications:

A generic name suggests the basic nature of the article or service. Most courts hold that a generic term is incapable of achieving trade name protection. * * * A descriptive term identifies a characteristic or quality of an article or service, and may become a protectable trade name only if it acquires a secondary meaning. * * * The distinction between descriptive and generic terms is one of degree. * * * A suggestive term suggests, rather than describes, a characteristic of the goods or services and requires an effort of the imagination by the consumer in order to be understood as descriptive; it requires no proof of secondary meaning to be protectable. An arbitrary or fanciful name bears no relationship to the product or service and is also protectable without proof of secondary meaning.

 Powder River Oil Company does not represent an arbitrary or fanciful name unrelated to the product. Similarly, no effort of imagination is required to suggest what business is involved. The composite trade name Powder River Oil Company is descriptive of the business and the geographic area where the business is conducted. Descriptive names require a secondary meaning to be eligible for protection from infringement and unfair competition. *Plains Tire and Battery Co.*, 622 P.2d at 921; *First Nat. Bank of Lander*, 592 P.2d at 703; *Burke–Parsons–Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590 (6th Cir.1989); *American Television and Communications Corp.*, 810 F.2d at 1549. The trade name Powder River Oil Company must be classified as "weak," meaning that proof of a secondary meaning in addition to proof of a likelihood of confusion is required to establish infringement. *FS Services, Inc. v. Custom Farm Services, Inc.*, 471 F.2d 671 (7th Cir.1972); 1 J. Thomas McCarthy, *supra*, at § 11:1.

### C. Secondary Meaning For Descriptive Names

 Secondary meaning issues create concepts of an intangible and ephemeral nature. 2 J. Thomas McCarthy *supra*, at § 32:36. Secondary meaning is found in a trade name which is used to identify a business with a name genealogy of a larger, more distinctive meaning. *Bernstein*, 160 P.2d at 229. A process of association creates secondary meaning when the trade name used "becomes distinctive and distinguishes not only the producer of a particular service and its quality but also the name of the producer of that service." *Wyoming Nat. Bank of Casper*, 572 P.2d at 1124. Secondary meaning creates a commercial impression separate and apart from the descriptive words. *In re Jackson Hole Ski Corp.*, 190 U.S.P.Q. 175, 176 (Trademark Trial & Appeal Bd.1976).

 The protection accorded descriptive trade names which acquire a secondary meaning is settled. The difficulty, as Chief Justice Blume noted, lies in the application of law to the facts in the case. *Bernstein*, 160 P.2d at 232. The acquisition of secondary meaning is a question of fact and generally should not be decided by summary judgment. *Marker Intern. v. DeBruler*, 844 F.2d 763 (10th Cir.1988). With this admonishment in mind and reviewing the record in the light most favorable to the

party opposing summary judgment, we shall examine whether the trade name, Powder River Oil Company, has achieved a secondary meaning.

■■■■ Proof of secondary meaning requires a showing that the trade name or trademark in question has come to represent the good will and reputation of the business. *Bernstein,* 160 P.2d at 228; *Frederick Warne & Co., Inc.,* 481 F.Supp. at 1195. Several nonexclusive factors, involving both direct and circumstantial evidence, may be considered to determine if a secondary meaning exists. These factors include:

*Direct Evidence*

[1] direct consumer testimony

[2] consumer surveys

*Circumstantial Evidence*

[3] exclusivity, length, and manner of use

[4] amount and manner of advertising

[5] amount of sales and number of customers

[6] established place in the market

[7] proof of intentional copying.

*Echo Travel, Inc. v. Travel Associates, Inc.,* 870 F.2d 1264, 1267 (7th Cir.1989); *see* 1 J. Thomas McCarthy, *supra,* at §§ 15:10–15:20. Direct evidence of secondary meaning is often difficult to obtain. *Burke–Parsons–Bowlby Corp.,* 871 F.2d at 596. We shall examine the available evidence relating to each of these factors within appellate review concepts regarding summary judgment to consider possible proof of any secondary meaning in the name Powder River Oil Company.

*(1) Direct Consumer Testimony*

The relevant consumer class for Powder River Oil Company's product is composed of purchasers or potential purchasers of crude oil and natural gas production. The most restricted relevant market area is the Powder River Basin of Wyoming. While the litigants may dispute the consumer class and market definitions as too broad or too confined, no persuasive evidence exists in the present record supporting any different application. No affidavits or other evidence supporting a secondary mean-

ing in the name Powder River Oil Company exist in the record from this consumer class.

*(2) Consumer Surveys*

Powder River Oil Company provided no survey data from the relevant consumer class.

*(3) Exclusivity, Length and Manner of Use*

■■■■ Powder River Oil Company is not an exclusive user of the composite terms in its name. The record discloses thirty-eight non-party entities in Wyoming who use the geographic term "Powder River" in combination with other descriptive or generic words. Third party use of a substantially similar trade name to promote the same goods or services to the same consumer class weighs against a finding of secondary meaning. *Echo Travel, Inc.,* 870 F.2d at 1269. However, no inferences favorable or unfavorable to Powder River Oil Company are possible because the record does not disclose if entities such as Powder River Crude Processors or Powder River Exploration and Development are direct competitors in the oil and gas exploration and producing business.

■■■■ The record does disclose that Powder River Oil Company first used its trade name in 1961 and registered the name in 1963. Also, Powder River Oil Company's incorporation date of 1968 predates Powder River Petroleum Corporation's existence by twenty years. Powder River Oil Company's use of its name for such a long period of time prior to Powder River Petroleum Corporation's entry into the market is evidence of secondary meaning. *Plains Tire and Battery Co.,* 622 P.2d at 921; *Wyoming Nat. Bank of Casper,* 572 P.2d at 1124.

*(4) Amount and Manner of Advertising*

It is undisputed that Powder River Oil Company does not advertise in the conventional sense of using mass media available to the general public. However, Powder River Oil Company did maintain listings in

*Armstrong Oil Directories* which may be relevant to members of the consumer class. The record, however, does not disclose the effect of this type of listing which is the test of its evidentiary value for secondary meaning. 1 J. Thomas McCarthy, *supra,* at § 15:16.

#### (5) Amount of Sales and Number of Customers

No evidence exists in the record disclosing the amount of Powder River Oil Company's sales or the number of its customers.

#### (6) Established Place in the Market

Powder River Oil Company presented two affidavits with evidentiary value on this point. Kenneth C. Naramore, a former President and Chairman of the Board of Directors of Stockmens Bank in Gillette, Wyoming, stated Powder River Oil Company had developed within the area both good will and an aggressive business reputation. Elvin L. Sprague, an independent geologist from Denver, Colorado, stated his view that the trade name Powder River Oil Company distinguished the business reputation of appellants in Wyoming and assisted in obtaining drilling prospect investors.

#### (7) Proof of Intentional Copying

The record does not disclose when Powder River Petroleum Corporation first learned of the prior user's identity. However, the record discloses that Powder River Petroleum Corporation became aware of the existence of Powder River Oil Company during the process of registering the trade name Powder River Petroleum Corporation with the Wyoming Secretary of State. Powder River Petroleum Corporation provides no explanation for the selection of its name. Consequently, insufficient evidence exists in the present record to suggest intentional copying of the trade name took place to benefit from use of any existing good will which had been created in the name.

■ Summarizing these secondary meaning factors, we find, under the limited record available, that Powder River Oil Company used its name more than twenty-five years prior to Powder River Petroleum Corporation. This long and continuous use favors Powder River Oil Company. *Bernstein,* 160 P.2d at 231; *Bishop v. Hanenburg,* 39 Wash.App. 734, 695 P.2d 607 (1985). Additionally, Powder River Oil Company has established a place or distinction in the market as a dominant firm in oil and gas exploration sufficient to warrant protection of its good will and reputation. *First Nat. Bank of Lander,* 592 P.2d at 703. Therefore, we hold Powder River Oil Company has established a secondary meaning in its trade name. On remand, the trial court will be free to re-examine the evidence using a more complete record to determine as an issue of fact whether secondary meaning has been achieved without the favorable inferences present in this summary judgment-determined proceeding. *See Frederick Warne & Co., Inc.,* 481 F.Supp. at 1198–99 and *Travel Magazine, Inc. v. Travel Digest, Inc.,* 191 F.Supp. 830 (S.D.N.Y.1961).

### D. The Likelihood of Confusion—Infringement

The test of trade name infringement is the " 'likelihood of confusion.' " *Plains Tire and Battery Co.,* 622 P.2d at 923 (quoting 3 Rudolf Callmann, *supra,* at § 80); 1 J. Thomas McCarthy, *supra,* at § 9:1. Wyoming initially used this test in *Bernstein,* 160 P.2d at 232. The use of the test applied by the Tenth Circuit Court of Appeals in *Standard Oil* was reaffirmed in other Wyoming decisions on trade name confusion. *Wyoming Nat. Bank of Casper,* 572 P.2d at 1121–22 (citing *Standard Oil,* 252 F.2d at 72); *Plains Tire and Battery Co.,* 622 P.2d at 922–23 (quoting *Standard Oil,* 252 F.2d at 73–74). As applied in *Standard Oil,* the court determined a likelihood of confusion existed from Standard Oil of Ohio's potential use of the confusingly similar trade name "Sohio" within the marketing area of Standard Oil of Indiana which had used trade names and trademarks including "Standard Oil," "Standard," "SO," "SO Co," "S O C O" and "Solite." *Standard Oil,* 252 F.2d at 68–69,

76. The Tenth Circuit Court of Appeals affirmed a limited injunction preventing use of "Sohio" in the marketing of petroleum products to the general public within a fifteen state area including Wyoming. *Id.* at 69, 78–79. The federal district court had issued the limited injunction because no evidence of trade name confusion was presented involving oil exploration or production activities. *Standard Oil Company v. Standard Oil Company,* 141 F.Supp. 876 (D.Wyo.1956), *aff'd* 252 F.2d 65 (10th Cir.1958).[2]

Subsequent Wyoming cases applying the likelihood of confusion test also involved products or services directed at the general public as a consumer class. In *Wyoming Nat. Bank of Casper,* two banks, First National Bank of Casper and Wyoming National Bank of Casper, attempted to stop a Wyoming Bancorporation subsidiary bank from changing its name to "First Wyoming Bank–Casper." *Wyoming Nat. Bank of Casper,* 572 P.2d at 1121. Another name change involving the Wyoming Bancorporation subsidiary in Lander was challenged in *First Nat. Bank of Lander,* 592 P.2d at 699. First National Bank of Lander wanted to change its name to "First Wyoming Bank, N.A.–Lander." First Wyoming Savings and Loan Association successfully challenged the name change by establishing a likelihood of confusion sufficient to require injunctive relief in Fremont County. *First Nat. Bank of Lander,* 592 P.2d at 703. In *Plains Tire and Battery Co.,* Plains Tire and Battery Company sought protection from customer confusion caused by the existence in the same market of Plains A to Z Tire Company. *Plains Tire and Battery Co.,* 622 P.2d at 919. Injunctive relief was ordered. *Id.* at 929.

As a result of the development of Wyoming's common law, the likelihood of confusion test has only been applied when products or services were offered to the general public as customers. Therefore, Wyoming has not considered, until this case, if potential confusion or actual confusion among suppliers or in a customer group which is severely limited by the nature of the business is sufficient to warrant protection from infringement and unfair competition. We must begin with an examination of the analysis framework which is used to determine the likelihood of confusion to see if its scope can be extended to meet our factual situation.

In *Standard Oil,* the Tenth Circuit Court of Appeals relied upon the Restatement rule that a designation became confusingly similar to a trademark or trade name if prospective purchasers regarded it as indicating the source identified by the trademark or trade name. *Standard Oil,* 252 F.2d at 72 (quoting Restatement of Torts § 728 (1938), omitted from Restatement (Second) of Torts §§ 711–756 introductory note at 1 (1979)). This rule was similar to § 32(1)(a) of the Lanham Act, 15 U.S.C.S. 1114(1), which at the time of the *Standard Oil* decision required confusion, mistake or deception by "purchasers as to the source or origin of such goods or services."[3] Determining whether a confusing similarity existed required the *Standard Oil* court to analyze several factors including: the "[d]egree of similarity in appearance, sound and meaning" between the trade name seeking protection and the challenged trade name; the "[i]ntent of the [party] adopting" the challenged designation; and "[t]he degree of care likely to be exercised

---

2. The *Standard Oil* case originated in Wyoming's federal district court where over one hundred and thirty witnesses generated more than five thousand pages of transcript during the longest federal court trial in the state's history to that point. *Standard Oil,* 141 F.Supp. at 878. Two thousand exhibits were prepared and examined. *Id.* The only non-federal infringement decision cited by the federal district court was Justice Blume's opinion in *Bernstein. Id.* at 884.

3. Most reported federal decisions on likelihood of confusion are premised upon the statutory authority of the Trademark Act of 1946 which is more commonly known as the Lanham Act. 15 U.S.C.S. §§ 1051 et. seq. (1991) (hereinafter Lanham Act). The Lanham Act provides for a system of registration of trademarks and codifies many of the common law rules relating to unfair competition, trademarks and trade names. "The common law test for likelihood of confusion is the same as the Lanham Act test." *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.,* 828 F.2d 1482, 1484 n. 2 (10th Cir.1987).

by purchasers." *Standard Oil*, 252 F.2d at 72 (citing Restatement of Torts § 729 (1938), omitted from Restatement (Second) of Torts §§ 711–756 introductory note at 1 (1979)) (hereinafter *Standard Oil* factors). This court approved the use of the *Standard Oil* factors in *Wyoming Nat. Bank of Casper*, 572 P.2d at 1124–25.

██ While the *Standard Oil* factors for determining a likelihood of confusion remain viable, they are not considered exclusive and no one factor is determinative. *Coherent, Inc. v. Coherent Technologies, Inc.*, 935 F.2d 1122 (10th Cir.1991). The facts of a particular case often invite consideration of multiple factors. *Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934 (10th Cir.1983) (*Beer Nuts I*). The most frequently referenced alternative list of factors was announced by Judge Friendly in *Polaroid Corporation v. Polarad Electronics Corp.*, 287 F.2d 492 (2nd Cir.), *cert. denied* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961) (hereinafter *Polaroid* factors). The eight *Polaroid* factors incorporate the *Standard Oil* factors and broaden the view to guide the inquiry into the likelihood of confusion by considering:

(1) the strength of the trade name seeking protection;

(2) the degrees of similarity between the two trade names;

(3) the competitive proximity of the products or services involved;

(4) the likelihood that the prior owner will "bridge the gap" between the two markets;

(5) the existence of actual confusion;

(6) the lack of good faith of the user of the challenged trade name in adopting the name;

(7) the quality of the product marketed under the challenged trade name; and

(8) the sophistication of the buyers.

*Id.* at 495. Judge Friendly acknowledged that even this list cannot account for all possibilities requiring courts to take other variables into account. *Id.* Although originally used to address the likelihood of confusion where the products differed, the *Po-*

*laroid* factors apply where the product or market classification is the same. *See Western Pub. Co., Inc. v. Rose Art Industries, Inc.*, 910 F.2d 57 (2nd Cir.1990); *Eclipse Associates Ltd. v. Data General Corp.*, 894 F.2d 1114, 1117 (9th Cir.1990); *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254 (2nd Cir.1987); and *Hard Rock Cafe Licensing Corp. v. Pacific Graphics, Inc.*, 776 F.Supp. 1454 (W.D.Wash.1991).

The *Polaroid* factors create a balancing test. *Western Pub. Co., Inc.*, 910 F.2d at 60–61; *Hard Rock Cafe Licensing Corp.*, 776 F.Supp. at 1463. The court in *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920 (10th Cir.1986) (*Beer Nuts II*) provided an illustration of the interrelationship between the analysis factors. "For example, a small degree of similarity between two [trade names] may lead to a finding that confusion is likely when the products are identical, inexpensive items. On the other hand, very similar [trade names] may not generate confusion as to the source of the products where the products are very different or relatively expensive." *Id.* at 925.

The likelihood of confusion in this case requires a broader review than that afforded by the *Standard Oil* factors because of the limited number and sophisticated nature of the customers involved when we consider any claim of supplier or buyer confusion. Therefore, the court will utilize the framework provided by Judge Friendly's *Polaroid* factors to assess the likelihood of confusion between Powder River Oil Company and Powder River Petroleum Corporation.

*(1) Strength of the Powder River Oil Company Trade Name*

The acquisition of secondary meaning, as previously determined, in the trade name Powder River Oil Company means that it is entitled to protection. *See Plains Tire and Battery Co.*, 622 P.2d at 921–22.

*(2) Degree of Similarity*

██ A confusing similarity exists if trade names "look or sound similar or con-

**414**

vey the same idea or meaning." *Beer Nuts II*, 805 F.2d at 925; 2 J. Thomas McCarthy, *supra*, at §§ 23:5–23:8.

> "It is not necessary for similarity to go only to the eye or the ear for there to be infringement. The use of a designation which causes confusion because it conveys the same idea, or stimulates the same mental reaction, or has the same meaning is enjoined on the same basis as where the similarity goes to the eye or the ear."

*Plains Tire and Battery Co.*, 622 P.2d at 923 (quoting *Standard Oil*, 252 F.2d at 74). Similarities in the trade names are to be weighed more heavily than differences. *Beer Nuts II*, 805 F.2d at 925. The examination must consider the meaning of the trade names taken as a whole. *Id.* Whatever technical distinctions may be made between various terms, the primary concern of the reviewing court is the meaning of the trade name to the prospective purchasers. *Hancock · v. American Steel & Wire Co. of New Jersey*, 40 C.C.P.A. 931, 203 F.2d 737 (1953).

A comparison of the trade names in question, Powder River Oil Company and Powder River Petroleum Corporation, directs a conclusion that a similarity of meaning is involved. *See* 2 J. Thomas McCarthy, *supra*, at § 23:8. Both trade names connote business entities selling hydrocarbon products from the Powder River Basin of Wyoming. Oil is a common synonym of petroleum. Roget's International Thesaurus 1125 (4th ed. 1977). Company and corporation are synonymous in the public mind. Black's Law Dictionary 255 (5th ed. 1979). The commercial impression created by the trade name Powder River Petroleum Corporation conveys the same meaning as the protected trade name Powder River Oil

Company.[4] Since both entities market identical goods, oil and gas production direct from the wells, the similarity weighs heavily against Powder River Petroleum Corporation's use. *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 673 (Fed.Cir.1984).

### (3) Product Proximity

The competitive proximity between Powder River Oil Company and Powder River Petroleum Corporation is termed "substantially identical" by Powder River Oil Company. Powder River Petroleum Corporation disputes the market comparison by pointing out that it has only four longstanding customers buying its oil and gas produced in Wyoming. Powder River Petroleum Corporation also argues it is not in direct competition with Powder River Oil Company since the two businesses operate in different counties and a mistaken purchase is "hardly likely."

A claim that no likelihood of confusion exists when there is a lack of direct competition misstates the law. Direct competition between the parties is not necessary for there to be a likelihood of confusion. *Standard Oil Co. of N.M. v. Standard Oil Co. of Cal.*, 56 F.2d 973 (10th Cir.1932); 2 J. Thomas McCarthy, *supra*, at § 24:4. Confusion, or the likelihood of confusion, not competition, is the real test of infringement. *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857 (5th Cir.1967).

The use of the trade names Powder River Oil Company and Powder River Petroleum Corporation within the same industry, petroleum, supports a finding of competitive proximity. *Mobil Oil Corp.*, 818 F.2d

**4.** As 2 J. Thomas McCarthy, *supra*, at § 23:11 points out, similarity of trade names is a determination made on the facts of each case making prior decisions of little value; but, examples of confusion found by other courts provide useful guidance. *See Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.*, 870 F.2d 512 (9th Cir.), *cert. denied* 493 U.S. 872, 110 S.Ct. 201, 202, 107 L.Ed.2d 154, 155 (1989) (affirming trial court ruling that confusing similarity may exist between infringer's use of "No–Twist" on "C" clamps and protected user's "Kant–Twist"); *Beer Nuts II*, 805 F.2d at 926 (holding that infringer's "Brew Nuts" conveys same meaning or idea as protected "Beer Nuts" on snack food); *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.*, 748 F.2d 669, 676 (Fed.Cir.1984) (demonstrating likelihood of confusion between infringer's "Spice Valley" on brands of tea and protected user's "Spice Island"); and *Hancock*, 203 F.2d at 740–41 (holding infringer's use of "Tornado" on wire fencing carried identical meaning to protected user's "Cyclone").

at 258. Also, competitive proximity is measured by reference to the first two *Polaroid* factors. *Id.* The acquisition of a secondary meaning entitles Powder River Oil Company to protection against infringement of its trade name. *Plains Tire and Battery Co.*, 622 P.2d at 923; *Continental Motors Corp.*, 375 F.2d at 861. The long and continuous prior use of the trade name in the petroleum industry favors broader protection for Powder River Oil Company. *See Bernstein*, 160 P.2d at 229 and *Mobil Oil Corp.*, 818 F.2d at 258. While the record is limited, it discloses that both entities operate within the relevant market area we have defined as the Powder River Basin. It is presumptive to assume that competitive proximity is guided by political boundaries such as county lines. Competitive proximity is more properly demonstrated by a showing of practice within the industry. Powder River Oil Company's right to protect its trade name coupled with the similarity between the trade names Powder River Oil Company and Powder River Petroleum Corporation weighs in favor of a finding of competitive proximity even if direct competition is not present. *Mobil Oil Corp.*, 818 F.2d at 258; *Polaroid Corp. v. Polaroid, Inc.*, 319 F.2d 830 (7th Cir.1963).

#### (4) Likelihood the Prior Owner Will "Bridge the Gap"

The record indicates that both Powder River Oil Company and Powder River Petroleum Corporation have expanded or contracted their operations as economic conditions varied within the state. Such expansion, even if we assume they operate in different markets, could bring the two parties into direct competition. A conclusion that Powder River Oil Company could thus "bridge the gap" between its present market area and Powder River Petroleum Corporation's market area may be a permissible inference in this proceeding, but one to which, without more evidentiary support, we would attach minimal weight.

#### (5) The Existence of Actual Confusion

The analysis of the first three *Polaroid* factors is regarded as perhaps the most significant in determining the likelihood of confusion. *Mobil Oil Corp.*, 818 F.2d at 258. However, the trial court in this case focused its decision to grant summary judgment in favor of Powder River Petroleum Corporation on the fifth *Polaroid* factor. The trial court determined proof of actual confusion among "customers" was required as a matter of law to prove infringement. While the trial court found evidence of confusion among suppliers serving the parties, the trial court said "customers" were not confused. In review, we shall determine: first, whether proof of actual confusion is required as a matter of law to show infringement; and second, whether a showing of actual confusion is limited to customers. If the answer to these questions is "no," then the trial court erred as a matter of law in granting summary judgment on the infringement action.

■ There is no more positive proof of likelihood of confusion than evidence of actual confusion. *Plains Tire and Battery Co.*, 622 P.2d at 924 (quoting *Standard Oil*, 252 F.2d at 74). However, "[t]he test of infringement is the *likelihood* of confusion, not the proof of *actual* confusion." 2 J. Thomas McCarthy, *supra*, at § 23:2 (emphasis in original). A showing of actual confusion is not essential to an infringement action. *E. Remy Martin & Co., S.A. v. Shaw–Ross Intern. Imports, Inc.*, 756 F.2d 1525 (11th Cir.1985); *Sweetarts v. Sunline, Inc.*, 380 F.2d 923 (8th Cir.1967); *Standard Oil of N.M.*, 56 F.2d at 976. The *Bernstein* court recognized that it was not necessary to show instances of actual confusion if the court could view the similarity between trade names and find that a likelihood of confusion existed. *Bernstein*, 160 P.2d at 233. Therefore, the answer to the first question before this court is "no." Proof of actual confusion is not required as a matter of law to show infringement.

The existence of actual confusion is weighed in the balancing of the *Polaroid* factors. When actual confusion is present, it is often proven with direct testimony. *Plains Tire and Battery Co.*, 622 P.2d at

925. In addition, actual confusion is commonly established utilizing evidence such as consumer surveys, misdirected mail, or misdirected telephone calls. *See First Nat. Bank of Lander*, 592 P.2d at 703, using consumer surveys; *Standard Oil*, 252 F.2d at 74–75, using consumer surveys; *Bernstein*, 160 P.2d at 234, referring to numerous letters in the record as evidence of a likelihood of confusion; *International Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079 (7th Cir.1988), approving use of misdirected letters as evidence of confusion; *Plains Tire and Battery Co.*, 622 P.2d at 927, receiving employee testimony of misdirected phone calls; and *Armco, Inc. v. Armco Burglar Alarm Co., Inc.*, 693 F.2d 1155 (5th Cir.1982), receiving employees testimony of misdirected phone calls.

 Powder River Oil Company's evidence of confusion included an affidavit from Gibson claiming misdirected phone calls and misdirected mail. Records of misdirected telephone calls to Powder River Oil Company included: a call from someone seeking to purchase an interest in Powder River Petroleum Corporation; calls from companies soliciting business from Powder River Petroleum Corporation; a call from an oil industry journalist seeking information about Powder River Petroleum Corporation; and calls from companies which supplied services to Powder River Petroleum Corporation. Various misdirected documents included over $55,000 in bills from suppliers for services rendered to Powder River Petroleum Corporation but mailed to Powder River Oil Company and business solicitations from service and supply companies.[5] The trial court found this evidence was sufficient to indicate actual confusion existed and we agree when viewed in the light most favorable to the party opposing summary judgment.

 Despite finding actual confusion, the trial court granted Powder River Petroleum Corporation's motion for summary judgment because the confusion did not include "customers." The view that infringement requires a likelihood of confusion among customers is too restrictive. *Marathon Mfg. Co. v. Enerlite Products Corp.*, 767 F.2d 214 (5th Cir.1985). Trade names, like trademarks and service marks, serve the basic legal purpose of identifying a business. The identification carries various social policy values including consumer protection, property rights, economic efficiency and universal concepts of justice. 1 J. Thomas McCarthy, *supra*, at § 2:1. Limiting infringement claims to actions where a likelihood of confusion among customers is shown devalues the other policy reasons for securing trade name protection. For example, securing the advantage of a good business reputation is a significant policy reason for protecting trade names. *Bernstein*, 160 P.2d at 228. A business reputation, earned over years of conscious effort, deserves protection from those who would tarnish it unfairly by using a confusingly similar trade name. Entities such as suppliers, distributors and service companies certainly consider the business reputation of a firm with which they do business; and especially for transactions based on assessment of good credit. If a likelihood of confusion among suppliers, distributors, service companies or other relevant classifications exists, it deserves consideration as a relevant factor in determining infringement.

Other state and federal courts agree that the likelihood of confusion should not be limited to customers. In *Bishop*, 695 P.2d

---

5. Also present in the record is a rejection notice for an oil purchase from a Powder River Petroleum Corporation customer which was misdirected to Powder River Oil Company. The admissibility of this document as evidence of customer confusion is disputed by the parties. The record does not disclose if the trial court ruled on the document's admissibility during the unrecorded summary judgment hearing. Because of the failure to record the summary judgment hearing, it is similarly not clear from the record if Powder River Petroleum Corporation objected to the document's admissibility. The trial court's decision letter mentions the rejection notice, but fails to disclose what weight was attached to the evidence. In light of the trial court's decision, evidence of customer confusion such as this rejection notice may be a material fact. However, for the purposes of this proceeding, we find it unnecessary to rule on the admissibility of the document and it has not been considered.

at 611, the court considered misdirected billings from a supplier as evidence of confusion. The case involved a drapery wholesaler with a limited retail clientele who sought protection for the firm's trade name. The court reasoned that "if a supplier is confused by similar businesses with identical names, the consuming public is likely to be similarly confused." *Id.* Federal courts have long recognized that a likelihood of confusion is not limited to customers. In the leading case, *Mastercrafters C. & R. Co. v. Vacheron & Const.–Le C.W.*, 221 F.2d 464 (2nd Cir.), *cert. denied* 350 U.S. 832, 76 S.Ct. 67, 100 L.Ed. 743 (1955), the court found visitors to the homes of buyers of the infringer's cheaper, electric clocks were likely to be confused into believing the cheaper clocks were in fact luxury Swiss models. The likelihood of confusing the visitor was sufficient for the Swiss clock distributors to seek an injunction and damages. *Id.* at 467. In *Marathon Mfg. Co.*, a nickel cadmium battery manufacturer, Marathon, sued to stop the infringer, Enerlite, from using the Marathon name on a battery product made for video cameras. Marathon proved a likelihood of confusion existed in the nickel cadmium battery industry. *Marathon Mfg. Co.*, 767 F.2d at 221. Enerlite challenged that Marathon had not proven confusion from the actual or typical purchasers of Marathon products. The court held Marathon did not have to prove confusion on the part of actual buyers. The likelihood of confusion is not predicated upon a claim that the public may be misled. *Id.*

Perhaps the most persuasive evidence of the change in the former attitude requiring a likelihood of confusion among purchasers came in 1962. In that year, Congress amended § 32(1)(a) of the Lanham Act, 15 U.S.C.S. § 1114(1)(a), eliminating language requiring a showing that the infringer's use of a registered mark is likely to cause confusion or mistake or to deceive "purchasers as to the source or origin of such goods or services." Act of Oct. 9, 1962, Pub.L. No. 87–772, § 17, 76 Stat. 773, 1962 U.S.C.C.A.N. at 2850. The quoted language, which was a part of the Act when *Standard Oil* was decided, was eliminated. The purpose of the amendment was specifically to allow evidence of any kind of confusion to support infringement litigation. *Marathon Mfg. Co.*, 767 F.2d at 221; *Hard Rock Cafe Licensing Corp.*, 776 F.Supp. at 1461.

The effect of the elimination of "purchasers" from the likelihood of confusion test is easily demonstrated by a comparison of arguments in the present case with those offered in *Mobil Oil Corp.* Powder River Petroleum Corporation argues there is little likelihood that crude oil and natural gas purchasers would make a mistake and buy products from it when they intended to purchase from Powder River Oil Company. Powder River Petroleum Corporation points out that oil and gas purchasers have to install pipelines or tank farms at the wells, so there is no material chance of potential customers mistakenly trading with one party while thinking the purchase was with the other. The *Mobil Oil Corp.* court considered a similar argument. Mobil Oil sought protection from infringement and unfair competition by Pegasus Petroleum in the petroleum industry. *Mobil Oil Corp.*, 818 F.2d at 255. Pegasus Petroleum argued its oil trading business was conducted with sophisticated buyers, not with the public, and no actual confusion had been proven. *Id.* at 258–60. The appellate court affirmed the trial court's finding that a likelihood of confusion existed not in the fact that a third party would do business with Pegasus Petroleum believing it was related to Mobil Oil, but rather in the likelihood that Pegasus Petroleum would gain crucial credibility during the initial phases of a deal. *Id.* at 259. As an example, the court said an unsuspecting oil trader might accept a "cold" phone call from Pegasus Petroleum, a familiar procedure in oil trading, because the trader believed Pegasus Petroleum was related to Mobil Oil. *Id.* We find the logic persuasive that a likelihood of such initial interest confusion can occur when a confusingly similar trade name is used.

We hold that a showing of the likelihood of confusion is not limited to "customers."

In weighing the analysis factors, a court should consider the likelihood of confusion within the range of relevant classifications potentially affected by the alleged infringement. Therefore, the trial court's failure in this case to consider evidence of actual confusion among suppliers was an error of law. In our review, we find the fifth *Polaroid* factor, the existence of actual confusion, weighs strongly in favor of Powder River Oil Company. We shall continue our analysis to determine if summary judgment in favor of Powder River Petroleum Corporation could possibly be granted based on the weight accorded other *Polaroid* factors or on the unfair competition action.

### (6) Lack of Good Faith

Evidence of the intent of Powder River Petroleum Corporation in adopting its name is not part of the record. No deposition testimony or affidavits address the reasons for the choice of the name. The record does not disclose if Powder River Petroleum Corporation knew of the existence of Powder River Oil Company prior to attempting to register with the Secretary of State. The selection process utilized by Van Norman in deciding what to name his company is not in evidence. Therefore, it is not possible to weigh this factor or attach any reasonable inferences to it, especially in a summary judgment proceeding. *See Cordova,* 719 P.2d at 635.

### (7) Quality of the Product

■ No evidence of the product quality of the crude oil or natural gas marketed by Powder River Petroleum Corporation is present in the record. However, a senior user may seek to protect its reputation even when the infringer's goods are of top quality. *Mobil Oil Corp.,* 818 F.2d at 259–60.

### (8) Sophistication of the Buyers

The limited evidence contained in the record suggests that crude oil and natural gas buyers are sophisticated and therefore more capable of discriminating between similar trade names. *See* 2 J. Thomas McCarthy, *supra,* at § 23:29. If such a

finding were made, it would weigh in favor of Powder River Petroleum Corporation. However, a more fully developed record is necessary to establish whether or not a likelihood of confusion among buyers exists. Some courts have found a likelihood of confusion can exist even with sophisticated buyers in the petroleum industry. *See Mobil Oil Corp.,* 818 F.2d at 260.

■ Reviewing the *Polaroid* factors used to analyze the likelihood of confusion between the trade names, we find the balance weighs in favor of Powder River Oil Company. Secondary meaning entitles Powder River Oil Company to protect its name. A confusing similarity is present between Powder River Oil Company and Powder River Petroleum Corporation. Competitive proximity between the two entities is present. Actual confusion has been shown among suppliers. The remaining factors fail to shift the balance in favor of Powder River Petroleum Corporation. Therefore, summary judgment in favor of Powder River Petroleum Corporation on the infringement claim was inappropriate.

### E. Express or Implied Fraud—Unfair Competition

■ The line distinguishing between common law trademark or trade name infringement and unfair competition is not always straight. As Professor McCarthy points out, unfair competition rules offer broader protection. 1 J. Thomas McCarthy, *supra,* at § 8:1. Infringement claims consider only the trademark or trade name seeking protection. Unfair competition claims expand the consideration to issues of image and trade dress. *Id.* The general rule is the same facts which support an action for trademark infringement also support an action for unfair competition under common law and the Lanham Act under Section 43(a). *Frederick Warne & Co., Inc.,* 481 F.Supp. at 1195; 2 J. Thomas McCarthy, *supra,* at § 27:3. The likelihood of confusion is the test of both areas. *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194 (9th Cir.1979). As previously noted, the record lacks sufficient factual development on the issue of ex-

419

press or implied fraud for a finding to be made favorably or unfavorably regarding unfair competition resulting from an alleged trade name violation. *Bernstein,* 160 P.2d at 229–30. Summary judgment in favor of Powder River Petroleum Corporation was also inappropriate on the issue of unfair competition.

## IV.

## CONCLUSION

The decision of the trial court in granting summary judgment in favor of Powder River Petroleum Corporation and against Powder River Oil Company is reversed. The case is remanded to the trial court for further proceedings in conformity herewith.

Reversed and remanded.